Aida MARRERO, et al., Plaintiffs,

v.

CORPORACION DE RENOVACION
URBANA Y VIVIENDA, et al.,
Defendants.

Civ. No. 83–2408(RLA).

United States District Court,
D. Puerto Rico.

Feb. 27, 1987.

Rafael Enrique García Rodón, Hato Rey,
P.R., for plaintiffs.

Antonio Montalvo Nazario, Lares, P.R.,
Guillermo Silva Janer, Hato Rey, P.R., for
defendants.

## OPINION AND ORDER

ACOSTA, District Judge.

The present matter is a sequel to the Stipulation for Settlement filed on February 6, 1986 whereby the parties agreed to terminate all further proceedings in the present case except for the resolution of the insurance coverage issue now before the Court. The final payment of the $60,-000.00 settlement was deferred until we resolve this issue. Disposition of the coverage controversy was stayed pending a determination by the Superior Court of Puerto Rico, Guayama Part, of a Motion for Partial Summary Judgment filed by plaintiffs in the case of *América Prieto, et al. v. Perfecto Trabal, et al.*, at Civil No. CS–84–1264 [1].

On March 7, 1986, the Superior Court entered Partial Summary Judgment in the case filed therein and adjudged that, *inter alia*, Corporación de Renovación Urbana y Vivienda, hereinafter referred to as "CRUV", had been negligent and was therefore liable to plaintiffs for the damages sustained [2]. Following several appellate proceedings the Partial Summary Judgment became final on June 19, 1986.

The conclusive factual determinations, through the Partial Summary Judgment, by the Superior Court limits this Court's

---

1. A case arising under the same facts as the present one with the same parties in interest.

2. Certified translation of the Partial Summary Judgment was filed in this suit and its authenticity stipulated by the parties.

role to the interpretation of the insurance coverage afforded by each of the policies issued by the parties in controversy [3].

On the one hand we have Policy RES–86536—Comprehensive Automobile Liability Insurance—issued by Corporación Insular de Seguros, hereinafter referred to as "CIS", and having as its named insured CRUV. On the other hand, we have Policy SMP60–05438—Comprehensive General Liability Insurance—issued by Universal Insurance Company, hereinafter referred to as "UNICO", which also has CRUV as its named insured [4].

Succinctly stated, the issue is whether or not CIS's insurance policy provides coverage for the negligent act of officers of CRUV in selecting a provider of services. CIS argues that managerial acts, such as the one at issue here, are not covered under its policy but, rather, under the policy issued by UNICO, since UNICO's policy provides the broadest coverage available which implicitly applies to a wide spectrum of accidents and exposures or liabilities unless specifically excluded.

UNICO, on the other hand, contends that coverage is provided instead by the CIS policy inasmuch as its Comprehensive Automobile Liability Insurance Policy covers all incidents arising under or related to the use, transportation, selection, driving, or contracting of motor vehicles [5].

Our role at this time is to decide which of the two policies in question is bound to afford coverage.

Upon review of the entire record, having heard the testimonies presented, the evidence submitted, as well as the applicable principles of law, the Court makes the following findings of fact.

**3.** Although not originally a part in the case before us, Corporación Insular de Seguros, a domestic insurance company, voluntarily submitted itself to the jurisdiction of the Court at the hearing held on January 26, 1987. This decision, we intimate, was based on the need to pursue their position without affecting its insured's—"CRUV"—impression that coverage and legal representation has been provided since the inception of the accident giving rise to the complaint in the present case.

**4.** A third policy, also issued by UNICO, and to which reference is made in the Supplementary

## FINDINGS OF FACT [6]

1. During the summer of 1983 Perfecto Trabal was selected and contracted by co-defendant CRUV to render transportation services.

2. CRUV paid for and supervised the activities and trips in which it used the services of Perfecto Trabal.

3. CRUV was directly involved in retaining the transportation services and in sponsoring and supervising the activities, including that of July 17, 1983.

4. For about a month prior to the accident occurring on July 17, 1983 CRUV had difficulty with the transportation services offered by Perfecto Trabal specifically with respect to the mechanical conditions, as well as with the acts and omissions of the drivers employed by Trabal.

5. Although CRUV was aware of the serious mechanical defects of Mr. Trabal's buses for over one month prior to the accident, it never informed the injured parties about them.

6. On July 17, 1983, two buses from the Perfecto Trabal Bus Line were assigned for an excursion to the town of Arroyo. On their way there, one of the buses' "clutch fell on the road to Guayama" necessitating to be pushed by the other one coming behind. In the course of so doing, after having reached the top of a hill and upon coming down, the brakes of the bus failed at a curve and it went down a ravine.

7. The bus involved in the accident was deteriorated to such an extent that it was a threat to the safety of the passengers and to the public at large. It was foreseeable that an accident could occur if used for transportation of passengers.

Pre-Trial Order and Brief filed, is of no concern to the adjudication of this matter, as the parties agreed at the hearing held it is an Umbrella Liability Policy that does not trigger coverage until the primary limits of CIS or UNICO are exhausted.

**5.** *See* theories of the parties, Supplementary Trial Brief filed on January 16, 1987.

**6.** Based upon the Partial Summary Judgment issued by the Superior Court of Puerto Rico, Guayama Part, on March 7, 1986.

8. CRUV acted imprudently and was responsible for the accident of July 17, 1983, because of the negligent selection and contracting of Perfecto Trabal's buses knowing that its mechanical conditions were of such nature that it was foreseeable that they could cause an accident.

9. The accident of July 17, 1983 came about when the driver of the bus lost its control, the brakes failed, and the bus went down a ravine resulting in injuries to plaintiffs.

## CONCLUSIONS OF LAW

The insuring agreement in a policy is the "heart of the policy" and defines in general terms the events to which coverage applies. As contained in CIS policy it applies to *bodily injury* ... "caused by an *occurrence* and arising out of the ownership, maintenance or use, including loading and unloading, of any *automobile.*" The one issued by UNICO limits its application to *bodily injury* ... "caused by an *occurrence*" ... but specifically *excludes* from its scope "bodily injury arising out of the ownership, maintenance, operation, use, loading or unloading of ... *any vehicle.*"

The issue in this case is, therefore, the type of event covered by each policy. On the one hand it is argued that CRUV acted negligently in the selection and contracting of a motor vehicle carrier and that consequently it wrongfully discharged its managerial duties. As such, the Comprehensive General Liability Policy would provide coverage for it does not exclude managerial acts. However, to accept that proposition would mean that the scope of the policy would need to be examined by using a divisible approach, that is, insurance-related theories of liabilities and also questions of coverage. However, the insurance policies in the present case cover accidents, not theories of liabilities. The *occurrence*, as defined in the policy, is the one which triggers coverage. The managerial misfortune by itself is of no further consequence. It is the accident occurrence that brings into play the insurance coverage.

■ The insuring agreement for both policies at issue are clear and unambig-

uous: occurrences arising out of the maintenance or use of any automobile. Read in conjunction, the exclusion contained in the policy issued by UNICO is the very condition which prevents coverage of the accident occurring on July 17, 1983.

CIS has attempted to bring the coverage question under consideration within the framework of the recently enunciated doctrine of "negligent entrustment". Its rationale is not founded upon negligence in the use or operation of a motor vehicle, but rather upon the primary negligence of the entruster (CRUV) in supplying an automobile to an incompetent driver. *Cooter v. State Farm Fire and Casualty Co.*, 344 So.2d 496 (Ala.1977). [Applying the facts of this case to that theory would be to equate CRUV's negligent selection and contracting actions to that of the entruster, and the entrustee to that of the operation of a defective bus. This is not easy to visualize but worthy of consideration as a collateral issue presented.]

The case law reported on this subject appears to have originated in the middle part of the 1970's with the initial cases favoring a two-pronged approach giving way to the now generally recognized and majority position that coverage is determined on the basis of the occurrence that prompts it and not under theory of liabilities. *Upland Mut. Ins. Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974) is the guide for the minority position and whose reasoning is attributed to a necessity for insurance coverage for an automobile accident under a Homeowners Insurance Policy. Had there been an automobile liability policy the issue would not have reached the Court. *Travelers Ins. Co. v. Beschel*, 71 Misc.2d 420, 336 N.Y.S.2d 370 (N.Y.Sup. 1972); *McDonald v. Home Insurance Company*, 97 N.J.Super. 501, 235 A.2d 480 (1967) followed this same trend. An examination of their holdings would appear to reinforce the proposition that, absent an automobile liability policy, a need for insurance coverage was warranted and therefore coverage was determined under a Homeowner Insurance and/or when the accident involved recreational vehicles not covered under the auto policy. That is not

the situation in our case where an automobile liability policy was specifically issued by CIS and whose position could be summarized as having collected insurance premiums for a definite coverage which it now pretends to disregard.

However, the trend and majority position regarding the negligent entrustment holds the contrary. Quite simply, negligent entrustment as a distinct and separate cause of action is not exclusive, but rather is derived from the more general concepts of ownership, operation and use of a motor vehicle. *Mutual Services Casualty Ins. Co. v. Koenings*, Wisconsin Supreme Ct. No. 81–425, February 3, 1983, CCH 1983 Fire and Casualty Cases 878; *State Farm Fire & Casualty Co. v. McGlawn*, 84 Ill. App.3d 107, 39 Ill.Dec. 531, 404 N.E.2d 1122 (1980), CCH 1980 Fire and Casualty Cases 45; *Atlantic Mutual Fire Ins. Co. of Savannah v. Cook*, 619 F.2d 553 (5th Cir.1980), CCH 1980 Fire and Casualty Cases 55; *Barnstable County Mutual Fire Insurance Company v. Lally*, 374 Mass. 602, 373 N.E.2d 966 (1978), CCH 1978 Fire and Casualty Cases 562.

In considering the reasonable approach toward determining coverage, the majority of the courts have ruled that it is not necessary to examine the different ingredients leading to an accident separately but rather, that the whole situation is to be analyzed as a whole. Negligence of the entruster by itself does not trigger coverage. Were it not for the entrustee's negligence no liability ensues to the entruster. Thus the need for the concurrence of both elements and the ultimate determination of the application of the policy on the basis of its insuring agreement. *Shelter Mutual Ins. Co. v. Politte*, 663 S.W.2d 777 (Mo. App.1983), CCH 1985 Fire and Casualty Cases 806; *Fillmore v. Iowa National Mutual Insurance Co.*, 344 N.W.2d 875 (Minn.Ct. of App.1984), CCH 1984 Fire and Casualty Cases 1080; *Fidelity and Guaranty Ins. Underwriters v. McManus*, 633 S.W.2d 787 (Tex.1982), CCH 1982 Fire and Casualty Cases 1138; *Cooter v. State Farm Fire and Casualty*, 344 So.2d 496 (Ala. 1977).

Based on the foregoing, we find that coverage for the accident of July 17, 1983 is afforded exclusively under Policy RES–86536—Comprehensive Automobile Liability Insurance. The Court further finds that Policy SMP60–05438—Comprehensive General Liability Insurance—issued by UNICO specifically excludes from its coverage the negligent selection and contracting by CRUV and the wrongful discharge of CRUV's managerial duties leading to the accident in question.

On the basis of the foregoing, co-defendants CRUV and CIS are hereby ordered to pay plaintiffs the amount of $30,000.00 plus all interest accrued at the rate of 12% annually computed from February 6, 1986[7]. Costs are awarded to Universal Insurance Company. Judgment shall be entered accordingly.

IT IS SO ORDERED.

**7.** Pursuant to the Stipulation for Settlement   filed on February 6, 1986.