233 N.J. Super. 509 (1989)
559 A.2d 459
JOHN SCARFI, MICHAEL SCARFI, AL DE SANTIS AND DONALD DE SANTIS, PLAINTIFFS-RESPONDENTS,
v.
AETNA CASUALTY & SURETY COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 2, 1989.
Decided May 30, 1989.
*510 Before Judges MICHELS, LONG and KEEFE.
Leary, Bride, Tinker & Moran, attorneys for appellant (W. Stephen Leary, of counsel and on the brief).
Herten, Burstein, Sheridan & Cevasco, attorneys for respondents (Philip F. Sheridan, of counsel; Mark P. Marotta, on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant Aetna Casualty & Surety Company appeals from a summary judgment of the Law Division entered in favor of plaintiffs John Scarfi, Michael Scarfi, Al De Santis and Donald *511 De Santis in this action in which plaintiffs sought a declaratory judgment that Aetna's Comprehensive General Liability Insurance (CGL) policy afforded coverage to plaintiffs for claims against them arising out of an accident involving a vehicle owned by plaintiffs' corporation.
This suit arises as a result of Aetna's refusal to defend or indemnify plaintiffs in connection with an action instituted by Carlos Arias (Arias) for injuries sustained when a school van driven by Arias and a dump truck driven by Daniel J. Bubenik (Bubenik) collided, allegedly as a result of the negligent operation of the truck by Bubenik. Arias sued Bubenik and Bratt & Doxey Supply Co. (Bratt & Doxey), which was Bubenik's employer and the corporation that owned the truck. Arias also sued plaintiffs, who were the directors of Bratt & Doxey.
On the recommendation of one of its employees, Bratt & Doxey hired Bubenik to drive a 1974 GMC dump truck for it. Bubenik had approximately one-and-one-half years experience as a driver of a smaller dump truck than the one he was to drive for Bratt & Doxey. Before deciding to hire Bubenik, Bratt & Doxey officials asked Bubenik's insurer about his driving record; inquired of Bubenik's previous employer about his employment record, and required Bubenik to test drive the truck. Apparently satisfied with Bubenik's credentials, Bratt & Doxey hired Bubenik in early 1984, at which time Bubenik was informed of his duties as a driver and instructed how to inspect the lug nuts and the air brakes on the truck.
On the morning of August 23, 1984, the day of the accident, Bubenik hauled a load of sand from Bratt & Doxey's property in Park Ridge, New Jersey, to a site across the New York State line. On the return trip, as Bubenik was traveling south on Spring Valley Road in Ramapo, New York, he drove the truck over a slight rise in the road and noticed a small car slowing to turn left at an intersection a short distance from his truck. When Bubenik applied his brakes, the truck skidded and spun into the northbound lane, striking a school van traveling in the *512 opposite direction. Bubenik, who was thrown to the floor upon impact and suffered a concussion, was fairly unclear in his deposition regarding how the accident occurred. He testified, however, that the truck had never before skidded when the brakes were applied, and he concluded that the rainy conditions coupled with oil that he later noticed on the road might have contributed to the reaction of the truck.
Arias instituted suit against Bubenik and Bratt & Doxey to recover for personal injuries caused by Bubenik's allegedly negligent operation of the truck. Arias subsequently amended his complaint to include claims against plaintiffs for negligence in the hiring and training of Bubenik and in the repair and maintenance of the truck. Bratt & Doxey's insurer, Aetna, denied coverage and refused to defend or indemnify plaintiffs in connection with the underlying suit under its CGL policy, but undertook the defense of Bubenik, Bratt & Doxey and plaintiffs under its Business Auto policy.[1]
Plaintiffs thereupon instituted this action for a declaration that the Aetna CGL policy afforded them coverage for the claims asserted in the underlying suit. The trial court, on cross-motions for summary judgment, held that Aetna's CGL policy covered the allegations of the amended complaint and, therefore, that Aetna had a duty to defend and indemnify plaintiffs in the underlying suit instituted by Arias. This appeal followed.
The principle thrust of Aetna's contention is that the CGL policy did not provide coverage to plaintiffs for the negligent hiring asserted in the amended complaint. Specifically, Aetna argues that the CGL policy excluded coverage for claims arising *513 out of the ownership, operation and use of an automobile and that the Business Auto policy issued to Bratt & Doxey more properly afforded coverage for such claims.
Aetna's CGL policy, in pertinent part, provides:
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
bodily injury or
property damage
to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.
Exclusions
This insurance does not apply: ...
(b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of
(1) any automobile or aircraft owned or operated by or rented or loaned to any insured, or
(2) any other automobile or aircraft operated by any person in the course of his employment by any insured....
Aetna's Business Auto policy, in pertinent part, provides:
1. We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto.
2. We have the right and duty to defend any suit asking for these damages. However, we have no duty to defend suits for bodily injury or property damage not covered by this policy. We may investigate and settle any claim or suit as we consider appropriate. Our payment of the LIABILITY INSURANCE limit ends our duty to defend or settle.
Our function in construing a policy of insurance, as with any other contract, is to search broadly for the probable common intent of the parties in an effort to find a reasonable meaning in keeping with the express general purposes thereof. See Fidelity Union Trust Co. v. Robert, 36 N.J. 561, 567 (1962); American *514 Home Assur. Co. v. Hartford Ins. Co., 190 N.J. Super. 477, 484 (App.Div. 1983); Tooker v. Hartford Acc. and Indem. Co., 128 N.J. Super. 217, 222-223 (App.Div. 1974); Ins Co. of State of Penna. v. Palmieri, 81 N.J. Super. 170, 179 (App.Div. 1963), certif. den., 41 N.J. 389 (1964). In this pursuit, the language used in a policy of insurance should be given its ordinary and usual meaning. See Killeen Trucking, Inc. v. Great American Surplus Lines Ins. Co., 211 N.J. Super. 712, 714 (App.Div. 1986); Lansco, Inc. v. Dep't of Environmental Protection, 138 N.J. Super. 275, 281-282 (Ch.Div. 1975), aff'd o.b., 145 N.J. Super. 433 (App.Div. 1976), certif. den., 73 N.J. 57 (1977). Moreover, when the language of the policy is clear, the court is bound to enforce its terms as they are written, James v. Federal Insurance Co., 5 N.J. 21, 24 (1950); Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960), so as to fulfill the objectively reasonable expectations of the parties to the contract. Werner Industries, Inc. v. First State Ins. Co., 112 N.J. 30, 35-36 (1988); Rao v. Universal Underwriters Ins. Co., 228 N.J. Super. 396, 411-412 (App.Div. 1988). Finally, we are mindful of the corollary of construction that a strict interpretation is required where the clause in question is one of exclusion or exception designed to limit the protection afforded by the general coverage provisions of the policy. Butler v. Bonner & Barnewell, Inc., 56 N.J. 567, 576 (1970); Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 8 (1961). However, we must not disregard the clear import and intent of the exclusionary clauses in the policy.
With these principles in mind, we have no hesitancy in concluding that, under the CGL policy, Aetna had no duty to defend or indemnify plaintiffs with respect to the underlying suit. An insurer's duty to defend an insured against a lawsuit is well defined in Lumbermen's Mutual Casualty Co. v. United Services Automobile Ass'n, 218 N.J. Super. 492, 497 (App. Div. 1987), as follows:

*515 The duty to defend is determined by comparing the allegations of the complaint with the coverage provisions of the policy: the duty exists only if the complaint states a theory of recovery for which coverage is provided by the policy; there is no duty as to counts not covered. Hartford Acc. & Indemn. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 21-23 (1984); Burd v. Sussex Mutual Insurance Co., 56 N.J. 383, 388-389 (1970). The duty to defend is measured without regard to the ultimate merits of the cause of action: if the complaint alleges facts which, if proved, would constitute a covered risk, the insurer must defend even though if its insured wins at trial, the insurer will have no duty to pay. Hence, it is said that the duty to defend is independent of or broader than the duty to pay. Danek v. Hommer, 28 N.J. Super. 68, 79 (App.Div. 1953), aff'd o.b. 15 N.J. 573 (1954).
Here, the CGL policy issued to Bratt & Doxey plainly and unambiguously excluded or exempted from coverage bodily injury or property damage arising out of the ownership, operation or use of an automobile. The policy clearly did not provide coverage for injuries and damage arising out of the hiring and training of employees in connection with the ownership, operation, use, repair or maintenance of automobiles. Nothing in the policy reasonably could lead to the conclusion that such conduct was covered nor could the parties to the policy reasonably expect such a result. The policy clearly was designed to exclude coverage for personal injuries and property damage arising out of automobile accidents. It appears that coverage for such accidents was provided not by the CGL policy but, rather, by the Aetna Business Auto policy issued to Bratt & Doxey.
The complaint against plaintiffs was based on their alleged negligence in hiring and training Bubenik and in repairing and maintaining the truck. The acts of hiring and training Bubenik were incidental to the ownership, operation or use of the truck and, accordingly, were not covered by Aetna's CGL policy.
Moreover, the underlying action for negligent hiring or training was triggered only when Arias was injured as a result of the accident of August 23, 1984. Any injuries that resulted from that accident arose out of the ownership, operation or use of the truck. We hold, therefore, that the CGL policy did not *516 provide coverage to plaintiffs and, thus, did not require Aetna to defend or indemnify plaintiffs in connection with the underlying suit.
Our conclusion that the Aetna CGL policy did not provide coverage to plaintiffs in this matter is supported by our earlier decisions in Williamson v. Continental Cas. Co., 201 N.J. Super. 95 (App.Div. 1985); Bartels v. Romano, 171 N.J. Super. 23 (App.Div. 1979), and Westchester Fire Ins. Co. v. Continental Ins. Cos., 126 N.J. Super. 29 (App.Div. 1973), aff'd o.b., 65 N.J. 152 (1974). Moreover, many courts throughout the country are in accord with this view. See, e.g., Northern Assurance Co. v. EDP Floors, Inc., 311 Md. 217, 533 A.2d 682 (1987) (in which the court held that the insured's general liability policy exclusion for claims arising out of the loading or unloading of an automobile barred coverage of a claim for negligent hiring of an employee who injured a person while unloading floor tiles from a truck, allegedly in a negligent manner); Ruggerio v. Aetna Life & Cas. Co., 107 A.D.2d 744, 484 N.Y.S.2d 106 (1985) (in which the court held that the general liability policy of the insured, a taxicab company, excluded coverage for a claim against the insured for negligent hiring of a driver involved in an accident). See also Standard Mutual Ins. Co. v. Bailey, 868 F.2d 893 (7th Cir.1989) (in which the court held that, under Indiana law, the motor vehicle exclusion in a homeowner's policy barred coverage for a claim for negligent entrustment of the insured's automobile); Rubins Contractors, Inc. v. Lumbermens Mutual Ins. Co., 821 F.2d 671 (D.C. Cir.1987) (in which the court held that, under Maryland law, the automobile exclusion in the insured's general liability policy excluded a claim for negligent entrustment of a truck to one of the insured's employees); Allstate Ins. Co. v. Ellison, 757 F.2d 1042 (9th Cir.1985) (in which the court held that, under Alaska law, the "aircraft exclusion" in a homeowner's policy precluded coverage for a negligent entrustment claim for injuries sustained in *517 an airplane crash); Motorists Mutual Ins. Co. v. Kulp, 688 F. Supp. 1033, 1037-1038 (E.D.Pa. 1988), aff'd, 866 F.2d 1411 (3d Cir.1988) (in which the court stated that "it is not the negligent supervision or negligent entrustment of the minibike, but the use of that bike, which triggered the insured's alleged liability, and ... the [homeowner's] insurance policy excludes coverage for that use"); Marrero v. Corp. De Renovacion Urbana Y Vivienda, 658 F. Supp. 443, 445 (D.Puerto Rico 1987) (in which the court held that the insured's CGL policy excluded coverage for a claim of negligent entrustment of a vehicle to a driver, and stated that "coverage is determined on the basis of the occurrence that prompts it and not under [the] theory of liabilities"); Southeastern Fire Ins. Co. v. Heard, 626 F. Supp. 476, 480 (N.D.Ga. 1985) (in which the court held that a "watercraft exclusion" barred coverage under the insured's homeowner's policy for a claim for negligent entrustment, and stated that "[b]ecause negligent use is essential [to liability of the insured], negligent entrustment arises out of the use of a certain instrumentality"); Lumbermens Mutual Cas. Co. v. Kosies, 124 Ariz. 136, 602 P.2d 517 (1979) (in which the court held that the automobile exclusion of a homeowner's policy applied to a claim for the insureds' allegedly negligent entrustment of their car); Insurance Co. of North America v. Waterhouse, 424 A.2d 675, 682 (Del. Super. 1980) (in which the court held that the insured's homeowner's policy did not cover a claim for negligent entrustment of the insured's car to his son, because "[r]egardless of when and where the judgment is made to entrust the automobile, the essential triggering element giving rise to the tort is the use of the chosen instrumentality  the automobile"); Hawaiian Ins. & Guaranty Co., Ltd. v. Chief Clerk, 713 P.2d 427 (Hawaii 1986) (in which the court held that a claim for negligent entrustment of the insured's automobile fell within the automobile exclusion of the insured's homeowner's policy, because the negligent entrustment was irrelevant unless the person to whom the vehicle had been entrusted acted in a negligent *518 manner and inflicted injury as a result of that conduct); Allstate Ins. Co. v. Panzica, 162 Ill. App.3d 589, 114 Ill.Dec. 28, 515 N.E.2d 1299 (1987), app. den., 119 Ill.2d 553, 119 Ill.Dec. 381, 522 N.E.2d 1240 (1988) (in which the court stated that where the instrumentality that causes the injury is excluded from coverage under a policy, no liability coverage is afforded for negligent entrustment of the instrumentality, because injury resulting from the use of that instrumentality is necessary for the cause of action); Pedersen v. Republic Ins. Co., 72 Md. App. 661, 532 A.2d 183 (1987) (in which the court held that a claim for negligent entrustment of an automobile was excluded from coverage under a policy of homeowner's insurance that excluded claims arising out of the ownership or use of a motor vehicle); Barnstable County Mutual Fire Ins. Co. v. Lally, 374 Mass. 602, 605-606, 373 N.E.2d 966, 969 (1978) (in which the court stated that negligent entrustment is "not exclusive of, but, rather, is derived from the more general concepts" of ownership, operation and use of a motor vehicle); Michigan Mutual Ins. Co. v. Sunstrum, 111 Mich. App. 98, 315 N.W.2d 154 (1981) (in which the court held that the motor vehicle exclusion of a homeowner's policy precluded coverage for a claim for negligent entrustment of the insured's truck to his son); Fillmore v. Iowa Nat'l Mutual Ins. Co., 344 N.W.2d 875, 881 (Minn.App. 1984) (in which the court held the automobile exclusion of a homeowner's policy applicable to a claim of negligent entrustment, and stated that "[n]egligent entrustment and supervision are part of the tort of negligent use and operation of an automobile" and, therefore, such claims "arise out of the use of an automobile"); Shelter Mutual Ins. Co. v. Politte, 663 S.W.2d 777, 779 (Mo. App. 1983) (in which the court stated that "[b]ecause an essential element of the liability of the entrustor ... is the concurrent negligence of the entrustee ..., the entrustor's liability necessarily `arises out of' the operation of the motor vehicle ... [,] the activity for which coverage is specifically excluded in the insurance policy"); Pulleyn *519 v. Cavalier Ins. Corp., 351 Pa.Super. 347, 353-354, 505 A.2d 1016, 1020 (1986), app. den., 515 Pa. 569, 526 A.2d 1190 (1987) (in which the court stated that "it is not the negligent entrustment of the automobile to [the employee] but [the employee's] use of it that is the basis of the insured's ... alleged liability, and as to that use, the insurance policy excludes coverage"); Farmers Ins. Group v. Nelsen, 78 Or. App. 213, 216-217, 715 P.2d 492, 494 (1986), review denied, 301 Or. 241, 720 P.2d 1280 (1986) (in which the court held that a homeowner's policy did not cover an action for the insureds' allegedly negligent entrustment of a motorized bicycle to their minor son, and stated that "[c]overage does not turn on the legal theory under which liability is asserted, but on the cause of the injury"); Fidelity & Guaranty Ins. Underwriters, Inc. v. McManus, 633 S.W.2d 787 (Tex. 1982) (in which the court held that an exclusion in a homeowner's policy for recreational motor vehicles precluded coverage for a claim for negligent entrustment of a trail bike); Farmers Ins. Group v. Johnson, 43 Wash. App. 39, 715 P.2d 144 (1986) (in which the court held that a claim for negligent entrustment of a boat to the insureds' son was excluded from coverage by the "watercraft exclusion" in a homeowner's policy); Bankert by Habush v. Threshermen's Mutual Ins. Co., 110 Wis.2d 469, 480-482, 329 N.W.2d 150, 155 (1983) (in which the court stated that "[i]t is `occurrences' that are insured against, not negligent acts").
Finally, the case relied upon by plaintiffs, McDonald v. Home Ins. Co., 97 N.J. Super. 501 (App.Div. 1967), is distinguishable and does not support a contrary result. See Williamson v. Continental Cas. Co., supra, 201 N.J. Super. at 99-100; Bartels v. Romano, supra, 171 N.J. Super. at 28. To the extent that McDonald v. Home Ins. Co., supra, may be read as support for plaintiffs' position, we disagree with that holding.
Accordingly, the judgment under review is reversed and summary judgment is entered in favor of Aetna.
NOTES
[1] According to Aetna, while this appeal was pending, Arias and other claimants settled their personal injury claims. Various claimants in the underlying litigation, however, reserved the right to proceed against plaintiffs in this action on the theory of negligent hiring of Bubenik, but only to the extent of any policy limits provided by the Aetna CGL policy issued to Bratt & Doxey.