**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3750-20

COLIN YURCISIN,

 Plaintiff,

v.

RYAN FLEMING, JUSTIN
MAGARIELLO, MARK
MAGARIELLO, and CAROL
MAGARIELLO,

 Defendants.

_____

NEW JERSEY
MANUFACTURERS
INSURANCE COMPANY,

 Plaintiff-Appellant,

v.

RYAN FLEMING, COLIN
YURCISIN, JUSTIN
MAGARIELLO, MARK
MAGARIELLO, and CAROL
MAGARIELLO,

 Defendants-Respondents.

_____

Argued February 9, 2022 – Decided March 21, 2022

Before Judges Hoffman, Whipple, and Geiger.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Mercer County, Docket Nos. L-0691-17 and L-2053-17.

Stephen J. Foley, Jr., argued the cause for appellant New Jersey Manufacturers Insurance Company (Campbell, Foley, Delano & Adams, LLC, attorneys; Stephen J. Foley, Jr., on the briefs).

Scott A. Krasny argued the cause for respondent Ryan Fleming (Furlong and Krasny, attorneys; Scott A. Krasny, on the brief).

Kenneth W. Elwood argued the cause for respondent Colin Yurcisin (Blume, Forte, Fried, Zerres & Molinari, PC, attorneys; Kenneth W. Elwood, on the brief).

PER CURIAM

These consolidated cases arise from the physical assault of a guest by another guest at a party, and the resulting dispute between New Jersey Manufacturers Insurance Company (NJM) and its insured regarding whether NJM owed a duty to defend and indemnify the guest who committed the assault.

We derive the following facts from the motion record. Ryan Fleming and Colin Yurcisin were guests at a party hosted by Justin Magariello at the

home of his parents, Mark and Carol Magariello. Yurcisin alleged that Fleming, who was intoxicated, punched him in the face multiple times, causing serious injuries.

Fleming was charged with second-degree aggravated assault. As part of his entry into pretrial intervention (PTI), Fleming pled guilty pursuant to Rule 3:28-5(b)(2). At the plea hearing, Fleming testified that Yurcisin was sitting at a chair at the party, "minding his own business" when Fleming struck Yurcisin approximately six times in the face. Fleming further acknowledged at the plea hearing that his conduct was a "purposeful and knowing act." Fleming's admissions at the plea hearing were made under a civil reservation that the plea would not be evidential in any civil proceeding pursuant to Rule 3:9-2.

On April 3, 2017, Yurcisin filed a personal injury action against Fleming and the Magariellos (Docket No. L-691-17). In his eight-count complaint, Yurcisin alleged that Fleming is liable for "negligently and/or intentionally caus[ing] injury to [Yurcisin] for his improper, unauthorized and/or illegal conduct" (count four), and "maliciously and/or negligently assault[ing]" Yurcisin (count five). The remaining aspects of count four and the other six counts are directed against the Magariellos.[1]

---

[1] The complaint alleges the Magariellos: (a) negligently "created or caused to be created certain dangerous and hazardous conditions that led to [Yurcisin's]

Fleming was insured under his parents' NJM homeowner's policy (the policy). Fleming requested that NJM provide him with a defense and indemnify him against Yurcisin's claims. NJM denied coverage and the obligation to provide a defense for Fleming's acts, claiming the incident between Fleming and Yurcisin was not a covered occurrence as defined in the policy.

NJM contended that the incident between Fleming and Yurcisin "would not be classified as an accident." NJM asserted that because Yurcisin was claiming bodily injury and emotional damages which was "expected or intended" by an insured, coverage for the incident was excluded. NJM considered Fleming's actions "entirely intentional." NJM also noted that

injuries" by "serving, providing or otherwise making available, alcohol to [Fleming], while he was 'visibly intoxicated'" (count one); (b) were liable as a social host for not providing a reasonable and safe premises to Yurcisin (count two); (c) were liable as social hosts for negligently, recklessly and unlawfully serving alcoholic beverages to Fleming, and knew or should have known he was under the influence or impaired by the consumption of alcoholic beverages (count three); (d) were vicariously liable for the negligent and/or intentional acts of Fleming by serving alcohol to Fleming, (count four); (e) failed to warn or alert Yurcisin to the dangers of being present (count six); (f) created and/or maintained a nuisance that resulted in Yurcisin's injuries (count seven); and (g) are liable for negligently hiring, training, overseeing, and supervising the persons who served alcoholic beverages to Fleming, which facilitated and/or permitted Fleming's wrongful conduct (count eight). The Magariellos are covered by a different homeowner's policy. Mark and Carol Magariello were granted summary judgment dismissing the claims against them. The Magariellos have not participated in this appeal.

A-3750-20

Fleming never provided a statement explaining what happened at the party, and for those reasons, could not defend him in the personal injury action.

The policy provides coverage and indemnifies, holds harmless, and defends claims "brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies[.]" "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period in . . . bodily injury; or . . . property damage."

"Bodily injury" is defined as "bodily harm, sickness or disease, including required care, loss of services and death that results." The policy also provides coverage for "the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing bodily injury" by a person "off the insured location, if the bodily injury . . . [i]s caused by the activities of an insured."

For occurrences that are covered, the policy affords a defense to insureds at NJM's expense by counsel of NJM's choice, "even if the suit is groundless, false or fraudulent."

The policy excludes coverage and the duty to defend for the intentional acts of insureds, stating that coverage for bodily injury, property damage, and

medical expenses, and the duty to provide a defense to such claims, does not apply to:

> Expected Or Intended Injury
>
> Bodily injury or property damage, with respect to all insureds which is expected or intended by an insured even if the bodily injury or property damage:
>
> (a) Is of a different kind, quality, or degree than initially expected or intended; or
>
> (b) Is sustained by a different person, entity, real or personal property than initially expected or intended.

Yurcisin and Fleming do not dispute that the policy does not provide coverage or a duty to defend for Fleming's intentional acts.

NJM filed a complaint for a declaratory judgment that it had no obligation to provide a defense or liability coverage to Fleming for Yurcisin's claims (Docket No. L-2053-17). Fleming was defended in the personal injury and declaratory judgment actions by privately retained counsel, Scott A. Krasny. Fleming and the Magariellos filed answers contesting the declaratory judgment action and Fleming filed a counterclaim against NJM.

The trial court consolidated the actions and granted summary judgment to Carol and Mark Magariello. Those rulings are not part of this appeal.

Yurcisin moved for summary judgment in the declaratory judgment action to compel NJM to defend and indemnify Fleming against Yurcisin's

claims. In turn, NJM cross-moved for summary judgment for a ruling that it had no obligation to cover Fleming against Yurcisin's claims, and thus, had no duty to defend, indemnify, and hold Fleming harmless from those claims. Fleming then moved for summary judgment to compel NJM to defend and indemnify him against Yurcisin's claims.

The court issued three orders on August 2, 2019. It denied all three motions for summary judgment but still required NJM to defend Fleming against Yurcisin's claims. The court found there was a genuine issue of material fact whether Yurcisin's injuries were caused by Fleming's negligent, reckless, or intentional acts. The court noted Fleming's testimony at the plea hearing was admissible for impeachment purposes despite the civil reservation. The court also directed that the declaratory judgment action be tried before the personal injury action.

Counsel appointed by NJM to defend Fleming moved to compel Krasny to withdraw from the personal injury action. Fleming cross-moved to compel NJM to provide him with counsel in both the personal injury and declaratory judgment actions, and to pay Krasny's counsel fees and costs. Yurcisin filed a similar motion against NJM.

Despite denying summary judgment, the court found NJM had a duty to defend Fleming and was responsible for Fleming's attorney's fees in the

7

consolidated actions. The court ordered NJM to assign counsel to defend Fleming and to pay the attorney's fees and costs he had incurred in the consolidated actions. Krasny submitted a certification of fees and costs and a substitution of attorney in the personal injury action.

NJM moved for reconsideration of the order compelling it to pay Fleming's attorney's fees and to provide counsel for him in the consolidated actions. NJM raised a two-fold argument. First, NJM claimed that ordering it to pay its own counsel and its adversary's counsel in the same case created a conflict of interest. Second, NJM claimed it was error to require it to pay attorney's fees before Fleming prevailed in the declaratory judgment action. The court denied reconsideration and awarded $12,240 in attorney's fees and costs to Krasny in the consolidated actions through April 9, 2020.

By leave granted, NJM appeals from the orders: (1) directing it to provide counsel to Fleming in the consolidated actions and to pay the attorney's fees and costs incurred for the services rendered by Krasny in both actions; and (2) denying its motion for reconsideration and directing it to pay attorney's fees and costs to Krasny. This appeal followed.

NJM raises the following points for our consideration:

POINT I

NJM'S HOMEOWNERS POLICY DOES NOT PROVIDE COVERAGE TO DEFENDANT

FLEMING FOR DEFENSE OF THE DECLARATORY [JUDGMENT] ACTION FILED AGAINST HIM.

POINT II

THE TRIAL COURT ORDERS COMPELLING NJM TO PROVIDE DEFENDANT FLEMING WITH A DEFENSE TO THE ACTION FOR DECLARATORY JUDGMENT VIOLATES THE LONGSTANDING AND WELL-ESTABLISHED "AMERICAN RULE" REGARDING THE PAYMENT OF ATTORNEY[']S FEES.

POINT III

ENFORCEMENT OF THE TRIAL COURT'S INTERLOCUTORY ORDERS REQUIRING NJM TO NOW PAY DEFENDANT FLEMING'S COUNSEL FEES WILL DEPRIVE NJM OF THE ABILITY TO APPEAL FROM THOSE ORDERS AND RECOUP ANY PAYMENTS MADE FOLLOWING A VERDICT IN ITS FAVOR IN THE DECLARATORY ACTION. REVERSAL OF THE ORDERS REQUIRING PAYMENT OF FEES IN ADVANCE OF THE ENTRY OF FINAL JUDGMENT, THEREFORE, IS REQUIRED AT THIS TIME. (Not Raised Below).

"An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010) (citing Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960); Scarfi v. Aetna Cas. Sur. Co., 233 N.J. Super. 509, 514 (App. Div. 1989)). "In considering the meaning of an insurance policy, we interpret the language 'according to its plain and ordinary

meaning.'" Ibid. (quoting Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175 (1992)). "If the plain language of the policy is unambiguous, we will 'not engage in a strained construction to support the imposition of liability or write a better policy for the insured than the one purchased.'" Templo Fuente de Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 200 (2016) (quoting Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008)). Where the terms are ambiguous, they are construed against the insurer and in favor of the insured. Flomerfelt, 202 N.J. at 441.

Insurance policies commonly include exclusions from coverage. "Exclusionary clauses are presumptively valid[,]" ibid., and will be enforced if the clauses are "'specific, plain, clear, prominent, and not contrary to public policy,' notwithstanding that exclusions generally 'must be narrowly construed,' and the insurer bears the burden to demonstrate they apply." Abboud v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 450 N.J. Super. 400, 407 (App. Div. 2017) (quoting Flomerfelt, 202 N.J. at 441-42).

The parties do not dispute that the policy does not afford coverage for intentional conduct, such as an intentional assault. However, Yurcisin's complaint asserts causes of action against Fleming based upon both intentional and negligent conduct. The complaint alleges that Fleming is liable for "negligently and/or intentionally caus[ing] injury to [Yurcisin] for his

10

improper, unauthorized and/or illegal conduct" (count four), and "maliciously and/or negligently assault[ing]" Yurcisin (count five). Despite his testimony during factual basis for his guilty plea, Fleming now contends that he "blacked out" during the incident and has no memory of the event.

Our Supreme Court has addressed the complications that may arise when an insured is sued on alternate theories of liability, such as negligent and intentional torts. The Court recognized that "if there are multiple theories of liability, only some of which would be covered, the interests of the insured and insurer may not coincide." Flomerfelt, 202 N.J. at 446 (citing Burd v. Sussex Mut. Ins. Co., 56 N.J. 383, 389-90 (1970)). Because the Yurcisin's complaint alleges Fleming is liable for negligent and intentional conduct, we address the principles governing an insurer's duties to defend and indemnify its insureds.

> Those duties are neither identical nor coextensive, and therefore, must be analyzed separately. Although a definitive conclusion that a policy by its terms affords no coverage, and therefore that there is no duty of indemnification, also means that there is no duty to defend, coverage questions may not have clear answers in advance of discovery or trial. As a result, courts are often required to evaluate whether the insurer owes its insured a duty to defend in advance of a conclusive decision about coverage. In those circumstances, the separate principles that govern the duty to defend must be considered and applied.
>
> An insurer's duty to defend an action brought against its insured depends upon a comparison between the allegations set forth in the complainant's

pleading and the language of the insurance policy. In making that comparison, it is the nature of the claim asserted, rather than the specific details of the incident or the litigation's possible outcome, that govern the insurer's obligation.

In evaluating the complaint for this purpose, doubts are resolved in favor of the insured and, therefore, in favor of reading claims that are ambiguously pleaded, but potentially covered, in a manner that obligates the insurer to provide a defense. Similarly, if a complaint includes multiple or alternative causes of action, the duty to defend will attach as long as any of them would be a covered claim and it continues until all of the covered claims have been resolved.

[Flomerfelt, 202 N.J. at 444 (citations omitted).]

Stated another way, the duty to defend arises when a comparison of the allegations in the complaint with the language of the policy

reveals that, if the allegations of the complaint are sustained, the insurer will be required to pay any resulting judgment. Any doubts are resolved in favor of the insured. Liability of the insured to the plaintiff is not the criterion; it is the allegation in the complaint of a cause of action which, if sustained, will impose a liability covered by the policy. When multiple alternative causes of action are stated, the duty will continue until every covered claim is eliminated.

[S.T. Hudson Eng'rs, Inc. v. Pa. Nat. Mut. Cas. Co., 388 N.J. Super. 592, 606 (App. Div. 2006) (citations and internal quotation marks omitted).]

Our Supreme Court has explained that when there are covered and uncovered claims alleged in a complaint, the insurer has two options: (1) it can

"assume the defense if the insured agreed, with a reservation of its right to dispute coverage"; or (2) it can "refuse to defend and dispute its obligations later, so as to 'translate its obligation into one to reimburse the insured if it is later adjudged that the claim was one within the policy covenant to pay.'" Flomerfelt, 202 N.J. at 446 (quoting Burd, 56 N.J. at 390).

In Burd,"the Court recognized that it might be appropriate to decide the coverage question, and thus the insurer's duty to defend, before trial of the underlying claim." Flomerfelt, 202 N.J. at 446. The Court reasoned:

> Whenever the carrier's position so diverges from the insured's that the carrier cannot defend the action with complete fidelity to the insured, there must be a proceeding in which the carrier and the insured, represented by counsel of their own choice, may fight out their differences. That action may, as here, follow the trial of the third party's suit against the insured. Or, unless for special reasons it would be unfair to do so, a declaratory judgment proceeding may be brought in advance of that trial by the carrier or the insured, to the end that the third-party suit may be defended by the party ultimately liable.
>
> [Burd, 56 N.J. at 391.]

Accordingly, in instances where "the underlying coverage question cannot be decided from the face of the complaint, the insurer is obligated to provide a defense until all potentially covered claims are resolved, but the resolution may be through adjudication of the complaint or in a separate"

declaratory judgment action "between insured and insurer either before or after that decision is reached." Flomerfelt, 202 N.J. at 447.

Here, given the nature of the underlying facts and allegations, it is not surprising that NJM's position diverges from Fleming's position. Pursuant to the trial court's order, NJM provided Fleming with defense counsel. In turn, Krasny provided a substitution of counsel in the personal injury action.

NJM contends Yurcisin's injuries were caused by Fleming's intentional assault, not negligence. If NJM prevails on that issue, NJM does not owe a duty to defend or indemnify Fleming from Yurcisin's claims since the occurrence would be excluded from coverage.

The trial court directed that the declaratory judgment action shall be tried before the personal injury action. We discern no abuse of discretion by so ruling. Under these circumstances, the better course is for the declaratory judgment action to be decided on the merits before the personal injury action. Whether coverage exists for the occurrence is a legal issue to be decided by the court, not a jury. See Sealed Air Corp. v. Royal Indem. Co., 404 N.J. Super. 363, 375 (App. Div. 2008) ("The interpretation of contracts and their construction are matters of law for the court subject to de novo review.").

We affirm the ruling that the declaratory judgment action should be tried and decided before the trial of the personal injury action. We remand for that purpose and stay the personal injury action until that decision is rendered.

We part company with the trial court's order directing NJM to provide counsel to Fleming in the consolidated actions. An insurer is obligated to provide the insured with a defense against all actions covered by the insurance policy. Hartford Accident & Indemn. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 22 (1984). An insurer's duty to defend arises only "when the complaint states a claim constituting a risk insured against." Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173 (1992) (quoting Danek v. Hommer, 28 N.J. Super. 68, 77 (App. Div. 1953), aff'd o.b., 15 N.J. 573 (1954)).

Here, the declaratory judgment action has not yet been tried and the issue of whether the incident was a covered occurrence remains undecided. Moreover, the language of the policy does not obligate NJM to provide Fleming with a defense to the declaratory judgment action. Because the declaratory judgment will be tried first, we vacate the order requiring NJM to provide defense counsel in the personal injury action. NJM is only obligated to provide defense counsel in the personal injury action if Fleming prevails in the declaratory judgment action. We express no position on the outcome of the declaratory judgment action.

A-3750-20

We reverse the orders directing NJM to provide counsel to Fleming in the declaratory judgment action. We hold that NJM owes no such duty.

We also part company with the trial court's award of counsel fees and costs to Krasny privately retained counsel in the consolidated actions. "In an action upon a liability or indemnity policy of insurance," attorney's fees may be awarded "in favor of a successful claimant." R. 4:42-9(a)(6). "The term successful claimant is broadly defined as a party that 'succeed[s] on any significant issue in litigation which achieves some benefit the parties sought in bringing suit.'" Occhifinto v. Olivo Constr. Co., 221 N.J. 443, 450-51 (2015) (alteration in original) (quoting R.M. v. Supreme Ct. of N.J., 190 N.J. 1, 10 (2007)). Here, Fleming is not a successful claimant until he prevails on the coverage issue as the result of expending counsel fees. Id. at 451 (quoting Transamerica Ins. Co. v. Nat'l Roofing, Inc., 108 N.J. 59, 63 (1987)).

Accordingly, when an insured prevails in a declaratory judgment action by a finding of coverage for the incident, an award of counsel fees to the insured is appropriate. Sears Mortg. Corp. v. Rose, 134 N.J. 326, 356 (1993) (citing R. 4:42-9(a)(6)); accord Aquino v. State Farm Ins. Cos., 349 N.J. Super. 402, 410 (App. Div. 2002). Conversely, counsel fees will not be awarded to an insured in prosecuting or defending a declaratory judgment

16

action where it is later determined that no coverage exists.  W9/PHC Real Est. LP v. Farm Family Cas. Ins. Co., 407 N.J. Super 177, 203 (App. Div. 2009).

Because the coverage issue remains undecided, Fleming is not yet "a successful claimant" entitled to a counsel fee award under Rule 4:42-9(a)(6). The counsel fee awards in both actions were premature.  We vacate those awards without prejudice to Fleming renewing his claim for counsel fees and costs if he prevails in the declaratory judgment action.

In light of our ruling, we do not separately address the denial of NJM's motion for reconsideration.

We affirm the denial of Fleming's motion for sanctions against NJM. The application for sanctions lacks sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, vacated in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION