244 N.J. Super. 5 (1990)
581 A.2d 510
ALLSTATE INSURANCE COMPANY, PLAINTIFF-APPELLANT,
v.
JO ANN MORACA, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 10, 1990.
Decided October 18, 1990.
*6 Before Judges DEIGHAN, R.S. COHEN and BROCHIN.
Saiber Schlesinger Satz & Goldstein, attorneys for appellant (David J. D'Aloia and Louis H. Miron on the brief and reply brief).
Pett, Russo & Pett, attorneys for respondents Gerald Ramiza, Individually and as Executor for the Estate of Carol Ramiza and as Guardian ad litem for Steven Ramiza and Katherine Ramiza, Individually (Anthony L. Russo and Joseph A. Massood on the brief).
Robert F. Gallo, attorney for respondent Jo Ann Moraca (Yodice) (Martin S. Cedzidlo on the brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
The question to be resolved on this appeal is whether a claim for negligent supervision or entrustment of a motor vehicle is covered by a homeowner's insurance policy that excludes claims *7 for injuries arising out of the ownership or use of a motor vehicle.
On April 15, 1986, Daniel Moraca's automobile struck another vehicle and caused the death of two persons and injury to two others. Four actions were instituted against Daniel Moraca and his mother, defendant Jo Ann Moraca, now known as Jo Ann Moraca Yodice (Yodice), an insured of plaintiff Allstate Insurance Company. Yodice then made claims against Allstate under her homeowner's policy for defense and indemnity of the claims against her. Allstate then filed a declaratory judgment to determine coverage. Allstate appeals from an order denying its motion and granting Yodice's cross-motion for summary judgment. We reverse.
The facts in this matter are not disputed. Daniel Moraca, seventeen, had been involved in two accidents within the first four months after he began driving, one of which he pleaded guilty to a charge of careless driving. On April 15, 1986, seven months after he began driving, Moraca was driving his automobile when he struck another automobile owned by Gerald Ramiza, causing the death of two persons and injury to two others. Four personal injury actions against Moraca and his mother, Yodice, arose out of the accident. The claims asserted against Yodice each contended that she failed to exercise sufficient control and supervision of her son in the operation of his automobile and was negligent in permitting her son to own and operate his automobile because she had reason to know of his reckless and negligent driving habits.
Yodice forwarded the complaints to Allstate for defense and indemnification under her Allstate homeowner's policy, which provides:
Section II FAMILY LIABILITY AND GUEST MEDICAL PROTECTION
Coverage X
Family Liability Protection
Losses We Do Cover:

*8 Allstate will pay all sums arising from an accidental loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damages covered by this part of the policy.
Allstate reserved its rights and filed this action for a declaration of its obligations under its policy of insurance for the negligent supervision claims against its insured. Allstate contends that Yodice's homeowner's policy expressly precludes coverage for the claims asserted against her under the following exclusion:
Losses We Do Not Cover:
....
5. We do not cover bodily injury or property damages arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motorized land vehicle or trailer. [Emphasis supplied.]
Yodice's homeowner's policy was in effect at the time of the accident. She also carried an automobile liability policy issued by Liberty Mutual Insurance Company, insuring Yodice and her personal automobile. Moraca was insured by an automobile insurance policy issued by Allstate.
Allstate determined that Yodice was an additional insured under her son's automobile policy and defends both under that policy in the underlying tort litigation. However, Allstate argued that Moraca and Yodice were entitled to excess coverage under Yodice's Liberty Mutual automobile policy, but not under the homeowner's policy specifically excluding such coverage.
Yodice answered Allstate's complaint and counter-claimed for a declaratory judgment that her homeowner's policy provided coverage for the negligent supervision claims. The other defendants  plaintiffs in the personal injury actions  also answered alleging that Allstate was obligated under the homeowner's policy to defend and indemnify Yodice.
The trial judge denied Allstate's motion for summary judgment and granted summary judgment in favor of Yodice. He determined that the homeowner's policy, not Yodice's automobile policy issued by Liberty Mutual, provided coverage and *9 required Allstate to indemnify and defend Yodice for negligent supervision claims in the personal injury action. An order was entered consistent with the trial judge's determination and Allstate appeals. Yodice has not appealed from the determination that Liberty Mutual does not provide coverage under her automobile insurance policy.
Allstate, relying on Scarfi v. Aetna Casualty and Surety Co., 233 N.J. Super. 509, 559 A.2d 459 (App.Div. 1989), contends that the trial court erred in concluding that its homeowner's policy provided coverage for the negligent supervision claims against its insured, Yodice, arising out of her son's use of his motor vehicle.
Defendants Yodice and Gerald Ramiza, individually and as executor of the estate of Carol Ramiza, et al., and Katherine Ramiza contend that Scarfi continues the status quo and the exclusion does not preclude recovery under the Allstate homeowner's policy.

I
Defendants Yodice and Ramiza argue that McDonald v. Home Insurance Co., 97 N.J. Super. 501, 235 A.2d 480 (App. Div. 1967), controls in this case since it is "on all fours" with the issue at hand. In McDonald, the plaintiffs sued Home Insurance Company (Home) contending that their homeowner's policy required Home to defend them in an action brought by Walter Dorman for damages for the death of Dorman's son. Dorman's son was a passenger in a car owned by plaintiff's minor son, Mickey McDonald, and was killed when Mickey drove the car into a tree. Dorman's complaint alleged that the death of his son was caused by the two-fold negligence of the McDonalds: failing to supervise and control their child, knowing of his violent and dangerous habits; and causing or permitting Mickey to purchase and operate the car. 97 N.J. Super. at 502-03, 235 A.2d 480. Home refused to defend the McDonalds on the ground that the homeowner's policy did not apply "to the *10 ownership, maintenance, operation, use, loading or unloading of automobiles while away from the premises." 97 N.J. Super. at 503, 235 A.2d 480. However, the court held that Home was obliged to defend the McDonalds:
The action against the McDonalds was not based upon "the ownership, maintenance, operation, use, loading or unloading of ... automobiles ...," even though the immediate cause of the injury and death of Dorman, Jr. was Mickey's operation of the automobile. The action was based upon their alleged negligence in failing to supervise and control their child, knowing of his violent and dangerous habits.... The details of the alleged negligence were spelled out in the complaint and included causing and permitting Mickey to purchase and operate the automobile, but nowhere was it alleged that the McDonalds owned, maintained, operated or used the automobile, or that the automobile was negligently driven by them or their agent.
Id. at 503-04, 235 A.2d 480 (emphasis in original). The trial court relied upon McDonald in its determination that the automobile exclusion in a homeowner's policy did not apply to the facts presented in this case. The trial court did not have the benefit of Scarfi, which was decided subsequent to the trial court's determination of this matter. Scarfi distinguished, rejected and disapproved of McDonald, as did an overwhelming number of other jurisdictions. 233 N.J. Super. at 516-19, 559 A.2d 459; see cases cited Standard Mut. Ins. Co. v. Bailey, 868 F.2d 893, 898 & n. 6 (7th Cir.1989) ("Of the thirty-one jurisdictions that have considered the question, twenty-eight in number have held the policy exclusion [in homeowner policies] applicable to claims of negligent entrustment"); see also Annotation, Construction and Effect of Provision Excluding Liability for Automobile-Related Injuries or Damage From Coverage of Homeowner's or Personal Liability Policy, 6 A.L.R.4th 556, 572 (1981 & Supp. 1990).
In Scarfi, plaintiffs were directors of a corporation, Bratt & Doxey Supply Co., that hired Bubineck to operate a dump truck owned by the corporation. The dump truck was involved in a collision with a school van as a result of which Carlos Arias instituted an action for personal injuries because of Bubineck's alleged negligent operation of the truck. Aetna's Business Auto policy insured the corporation against liability resulting *11 from the ownership, maintenance or use of a covered auto. 233 N.J. Super. at 513, 559 A.2d 459. Arias amended his complaint to include claims against the plaintiffs/directors of the corporation for negligence in hiring and training Bubineck. The directors then instituted a declaratory judgment action against Aetna contending that a Comprehensive General Liability (CGL) policy issued to the corporation provided coverage to them for claims against them arising out of the accident. The CGL policy applied to injuries "caused by an occurrence" but contained the following exclusionary provision:
This insurance does not apply: ...
(b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of
(1) any automobile or aircraft owned or operated by or rented or loaned to any insured, or
(2) any other automobile or aircraft operated by any person in the course of his employment by any insured....
233 N.J. Super. at 513, 559 A.2d 459.
In construing the CGL policy, the court in Scarfi reviewed the general tenets for construction of an insurance policy and concluded that "we have no hesitancy in concluding that, under the CGL policy, Aetna had no duty to defend or indemnify plaintiffs with respect to the underlying suit." Id. at 513-14, 559 A.2d 459. The court noted that the CGL policy issued to Bratt & Doxey "plainly and unambiguously excluded or exempted from coverage bodily injury or property damage arising out of the ownership, operation or use of an automobile." Id. at 515, 559 A.2d 459. The court concluded:
Finally, the case relied upon by plaintiffs, McDonald v. Home Ins. Co., 97 N.J. Super. 501 [235 A.2d 480] (App.Div. 1967), is distinguishable and does not support a contrary result. See Williamson v. Continental Cas. Co., supra, 201 N.J. Super. [95] at 99-100 [492 A.2d 1028 (App.Div. 1985)]; Barrels [Barrels] v. Romano, supra, 171 N.J. Super. [23] at 28 [407 A.2d 1248 (App.Div. 1979)]. To the extent that McDonald v. Home Ins. Co., supra, may be read as support for plaintiffs' position, we disagree with that holding.

Id. 233 N.J. Super. at 519, 559 A.2d 459.
In reaching its conclusion, the court in Scarfi relied upon the earlier decisions of Williamson v. Continental Casualty Co., 201 N.J. Super. 95, 492 A.2d 1028 (App.Div. 1985), Bartels v. *12 Romano, 171 N.J. Super. 23, 407 A.2d 1248 (App.Div. 1979) and Westchester Fire Insurance Co. v. Continental Insurance Cos., 126 N.J. Super. 29, 312 A.2d 664 (App.Div. 1973), aff'd o.b., 65 N.J. 152, 319 A.2d 732 (1974).
It cannot be denied that the present case bears a striking resemblance to McDonald in that defendant did not own the car driven by her son, Yodice's son also was a minor, and she had knowledge of his reckless driving habits. Nevertheless, McDonald is distinguishable in several respects concerning the language of the exclusionary clause.

II
Since the McDonald decision, the exclusionary language in homeowners' policies has been broadened considerably to eliminate coverage in claims involving motor vehicles. As noted above, the exclusionary clause in McDonald was limited "to the ownership, maintenance, operation, use, loading or unloading of automobiles while away from the premises." 97 N.J. Super. at 503, 235 A.2d 480. The exclusionary clause in the present case has been extended in at least three respects in order to limit coverage for injuries "arising out of the ownership, maintenance, use, occupancy ... [or] entrusting ... of any motorized land vehicle." (Emphasis supplied.)
The exclusionary clause in the homeowners' policies in Williamson, Bartels, Westchester, and Scarfi were limited to "a motor vehicle owned, maintained, operated or used by the insured" or words to that effect. Williamson, 201 N.J. Super. at 97, 492 A.2d 1028; Bartels, 171 N.J. Super. at 26, 407 A.2d 1248; Westchester, 126 N.J. Super. at 34-35, 312 A.2d 664; Scarfi, 233 N.J. Super. at 513, 559 A.2d 459. Here, the exclusion is not restricted to ownership by the insured; it applies to "any motorized land vehicle" regardless of "ownership, maintenance, [or] use." (Emphasis supplied.) The adjective "any" is "used to indicate one selected without restriction." Webster's Ninth New Collegiate Dictionary 93 (1983). See Marrero v. Corporacion de Renovacion Urbana Y Vivienda, 658 F. Supp. *13 443, 445 (D.P.R. 1987) (exclusionary clause in comprehensive general liability policy "specifically excludes from its scope `bodily injury arising out of the ownership, maintenance, operation, use, loading or unloading of ... any vehicle'") (emphasis in original). Thus, the exclusionary clause in the present case is not limited to ownership of the vehicle by Yodice. It applies to claims for bodily injuries arising out of the "ownership, maintenance, use, occupancy ... [or] entrusting" of any vehicle for which a claim is made for personal injuries. See Westchester, 126 N.J. Super. at 41, 312 A.2d 664 (exclusionary clause in homeowner's policy was applied to the "ownership, maintenance, operation, use ... of (1) automobiles"). In Westchester, the court denied coverage under the homeowner's policy to Holkum, Sr., the father of a passenger who threw a stick out of the rear window of a car and injured a bicyclist.
It seems clear to us that the language in the [automobile and homeowner's policies] is mutually exclusive and that, as used in the homeowner's policy, is specifically designed to exclude coverage provided under language in the standard family automobile policy for injuries arising out of the use of the motor vehicle insured thereunder. The significance of the exclusion in the homeowner's policy of coverage relating to use of automobiles is underscored by the specific inclusion of coverage with respect to animals, watercraft and tractors.
Id. at 41-42, 312 A.2d 664.
Exclusions in homeowners' policies or comprehensive general liability policies referring to the use, operation, maintenance, and ownership of automobiles, as in McDonald, have been broadened, as in the present case, to exclude injuries arising out of the use of automobiles.[1] In Westchester, the court considered that the phrase "arising out of" "must be interpreted in a broad and comprehensive sense." Id. at 38, 312 A.2d 664 (interpreting coverage clause). See also Williamson, 201 N.J. Super. at 100, 492 A.2d 1028. Since McDonald,

*14 insurers broadened the language of the exclusion to exclude coverage for injuries arising out of the use of automobiles. This distinction was recognized by the Minnesota Supreme Court.... Minnesota has thus joined the vast majority of the states applying the exclusion.
Pedersen v. Republic Ins. Co., 72 Md. App. 661, 672, 532 A.2d 183, 188 (1987) (emphasis in original) (citations omitted). Pedersen noted that "[a]t least 25 jurisdictions have held the policy exclusion in question applicable to claims of negligent entrustment." Id. at 666 & n. 2, 532 A.2d at 186 & n. 2 (citing the 25 cases, including Williamson). The standard for liability arising out of the use of an automobile applies to a suit for negligent entrustment because no harm is done until the entrustee negligently drives the vehicle. Ruggerio v. Aetna Life & Cas. Co., 107 A.D.2d 744, 484 N.Y.S.2d 106 (1985).
The most apparent distinction in cases holding that an exclusionary clause in a homeowner's policy is either applicable or inapplicable is in the language of the exclusion itself. Bailey, 868 F.2d 893, 899 n. 9. For example, in Huggins v. Tri-County Bonding Co., 337 S.E.2d 12 (W. Va. 1985), the West Virginia Supreme Court of Appeals held that a motor vehicle exclusionary clause was inapplicable to a negligent entrustment claim. The exclusionary clause in that case provided that the policy did not apply to "ownership, maintenance, operation or use... of land motor vehicles." Id. at 14. In so holding, the Court specifically noted the policy's "lack of any expansive language such as used in other homeowners policies where the language in the automobile exclusion contains the phrase `arising out of' the ownership, maintenance or use of the vehicle." Id. at 17.
Similarly, with the exception of two Colorado cases .. . every other case holding the motor vehicle exclusion [in a homeowner's policy] inapplicable to a negligent entrustment claim involved a policy provision lacking the "arising out of" language.
Bailey, 868 F.2d at 900 n. 9.

III
In McDonald, the complaint did not specifically mention the tort of negligent entrustment. 97 N.J. Super. at 502-03, 235 *15 A.2d 480. Nevertheless, the court cited Restatement (Second) of Torts §§ 308 (negligent entrustment), 316 (Duty of Parent to Control Conduct of Child) (1965). 97 N.J. Super. at 504, 235 A.2d 480. The tort theory underlying either concept is negligence. See Douglass v. Hartford Ins. Co., 602 F.2d 934, 937 (10th Cir.1979) (a complaint against a parent may be based on either negligent entrustment or negligent supervision). "A parent, for example, like anyone else, may be negligent in entrusting to a child a dangerous instrument such as ... an automobile." W. Prosser, Prosser & Keeton on Torts § 123, at 914 (5th ed. 1984) (footnotes omitted).
Here, the exclusionary clause applies not only to ownership, maintenance, use or occupancy but also "entrusting ... of any motorized land vehicle." Therefore, the homeowner's policy in the present case specifically excludes coverage for negligent entrustment or supervision.
Defendants point out that in McDonald, as here, the son, not the father, was the owner of the vehicle. Unlike McDonald, in Bartels and Williamson the vehicles were owned by the father and under the homeowners' policies the exclusions applied because the claims arose out of the ownership and use of a vehicle owned or operated by an insured. Bartels, 171 N.J. Super. at 27, 407 A.2d 1248; Williamson, 201 N.J. Super. at 105, 492 A.2d 1028. Yet, in Westchester the plaintiffs sued Richard B. Holcombe, whose son threw the stick out of the car, causing injuries to the bicyclist. 126 N.J. Super. at 40, 312 A.2d 664. Holcombe did not own the motor vehicle, nevertheless, this court held that the claim against Holcombe came within the exclusion of the homeowner's policy. Id. at 42, 312 A.2d 664. Further, the dump truck in Scarfi was owned by the corporation and the suit for negligence was against the individual directors who were not the owners. Nevertheless, this court held that the same type of exclusion under the comprehensive general liability policy precluded coverage for the individual defendants who were not insureds under that policy. 233 N.J. Super. at 515-16, 559 A.2d 459.

*16 III
In McDonald, the court held that the homeowner's insurance carrier was obligated to defend: "The action against the McDonalds was not based upon `the ownership, maintenance, operation, [or] use, ... of ... automobiles....' ... The action was based upon their alleged negligence in failing to supervise and control their child, knowing of his violent and dangerous habits." 97 N.J. Super. at 503, 235 A.2d 480. The court in McDonald looked only to the negligent conduct of the father and ignored the negligent conduct of the son. See id. at 503-04, 235 A.2d 480. This approach to negligent supervision or negligent conduct as excluded under a homeowner's policy is against the overwhelming weight of authority that followed the leading case of Cooter v. State Farm Fire & Casualty Co., 344 So.2d 496 (Ala. 1977).
While liability (apart from coverage) for negligent entrustment is not conditioned upon the entrustor's ownership or use of the vehicle, negligent use by one to whom it is entrusted is essential to recovery. It is the occurrence of these dual elements  negligent entrustment by the owner or custodian of the instrumentality plus its negligent use by the entrustee  that is missing in the rationale of those cases upholding coverage.
Id. at 499.
This approach is known as the "instrumentality" theory for applying the exclusion to negligent entrustment of automobiles. Pedersen, 72 Md. App. at 668, 532 A.2d at 187. The rationale of Cooter was cited and quoted in Williamson, thus rejecting the rationale of McDonald that only the negligent supervision of the parents gave rise to the cause of action. Williamson found: "The reasoning of Cooter is clearly apposite to the present case. But for Stanley Messer's negligent use of Mack Messer's [the father's] car, no liability could result to Mack Messer." Williamson, 201 N.J. Super. at 104, 492 A.2d 1028. Thus, New Jersey adopted the instrumentality theory. Courts in many other jurisdictions, following Cooter, have held that injuries arising from the negligent entrustment of a motor vehicle are not covered by the standard homeowner's policy. See cases cited Scarfi, 233 N.J. Super. at 516-19, 559 A.2d 459.
*17 "On the ground that coverage turns on the cause of injury, rather than on the legal theory asserted against the insured, a number of courts have held that negligent entrustment claims are precluded by the [homeowner's] policy's automobile exclusion." 7A Appleman, Insurance Law and Practice, § 4500 (Berdal ed. Supp. 1990) (citing, among others, Lumbermen's Mut. Cas. Co. v. Kosies, 124 Ariz. 136, 602 P.2d 517 (Ct.App. 1979) (exclusion applied because without the use or operation of an automobile no accident would have occurred); Safeco Ins. Co. v. Gilstrap, 141 Cal. App.3d 524, 190 Cal. Rptr. 425 (1983) (vehicle-related conduct did not exist independently of any use of the vehicle and coverage was precluded by the exclusionary clause in a homeowner's policy); Insurance Co. of N. Am. v. Waterhouse, 424 A.2d 675, 682 (Del. Super. Ct. 1980) ("Regardless of when and where the judgment is made to entrust the automobile, the essential triggering element giving rise to the tort is the use of the chosen instrumentality  the automobile"); Farmers Ins. Group of Oregon v. Nelsen, 78 Or. App. 213, 715 P.2d at 492, rev. denied, 301 Or. 241, 720 P.2d 1280 (1986) (homeowner's policy with exclusion for liability arising out of the use of a motor vehicle did not depend on the theory of tort liability asserted and excluded liability on the theory of negligent entrustment); Bankert v. Thresherman's Mut. Ins. Co., 110 Wis.2d 469, 329 N.W.2d 150 (1983) (farmowner's policy excluded coverage for negligent entrustment of motorcycle; insurance policy does not insure against theories of liability, it insures against "occurrences" that cause injuries)).
In other words, "negligent entrustment of a motor vehicle is not independent of, but rather inextricably intertwined with, the more general concepts of ownership, operation, and use of a motor vehicle." Bailey, 868 F.2d at 898. Bailey noted that there are a minority of jurisdictions holding the exclusion inapplicable to claims for negligent entrustment. Id. at 899 & n. 9 (citing McDonald as a minority holding). The view rejecting exclusion seems to require torturing the language in the *18 exclusionary clause. Rubins Contractors, Inc. v. Lumbermens Mut. Ins. Co., 821 F.2d 671, 676 (D.C. Cir.1987).
Negligent entrustment is composed both of the entrustor's negligence in entrusting the instrumentality and the entrustee's negligent use of the instrumentality. Thus, the triggering element is negligent use of the item, for even if the entrustment was negligent, no cause of action could arise without an injury caused by negligent use of the item. Because negligent use is essential, negligent entrustment arises out of the use of a certain instrumentality. Thus, the exclusion applies. This construction is true to the exclusion's plain meaning.
South Eastern Fire Ins. Co. v. Heard, 626 F. Supp. 476, 480 (N.D.Ga. 1985); see cases cited id. at 480 n. 10 (applying the same rationale to negligent supervision).
The isolation in McDonald of negligent supervision or entrustment from the ownership, maintenance, operation or use of an automobile is contrary to the vast weight of authority including subsequent cases in New Jersey.

IV
Defendants point out that in Williamson and Bartels the automobiles were owned by the parents and operated by their sons. Insofar as the torts of negligent entrustment or negligent supervision are concerned, ownership of the instrumentality is not required but merely control of the activity. Restatement (Second) of Torts §§ 308, 316 (1965). See also Cooter, 344 So.2d at 499; accord Bailey, 868 F.2d at 899.
Defendants further stress that in Williamson and Bartels coverage was excluded under the homeowner's policy based on ownership of the vehicles by the parents. They argue that here, as in McDonald, the automobiles were owned, not by the parent, but by the sons. Recall, however, that here the exclusionary clause pertains to any motorized land vehicle regardless of ownership, maintenance or use. Also, in Westchester the exclusionary clause applied "to the ownership, maintenance ... [or] use ... of (1) automobiles." 126 N.J. Super. at 41, 312 A.2d 664. Further, in Scarfi the individual directors, who did not own the dump truck involved, were denied coverage under a *19 CGL policy issued to the corporation that excluded claims "arising out of the ownership, maintenance, operation, [or] use ... of (1) any automobile ... owned or operated by ... any insured." 233 N.J. Super. at 513, 559 A.2d 459.
Also, defendants note that in McDonald, the court was confronted with the issue of coverage or no coverage and that Bartels distinguished McDonald on the ground that there was no contention that McDonald owned, maintained, operated or used the automobile. Bartels, 171 N.J. Super. at 28, 407 A.2d 1248. See also Williamson, 201 N.J. at 102, 492 A.2d 1028; Waterhouse, 424 A.2d at 681. Although here the record does not reflect the extent of coverage, nevertheless, the automobile owned and operated by Daniel Moraca was covered by automobile insurance. Insofar as coverage is concerned, "homeowner's insurance is intended to cover risks attendant upon home and related activities, while automobile liability insurance is designed to provide basic coverage for all risks inherent in the use and ownership of motor vehicles." Waterhouse, 424 A.2d at 680.
In 7a Appleman, supra, § 4501.02, at 255, it is observed that a homeowner's policy is merely a personal, comprehensive liability policy which "is simply a combination of the many property and liability coverages desired by the average person." It is comparatively low in costs, and is primarily a non-business, nonautomobile policy that courts take cognizance of the parties' intent and reasonable expectations in executing the contract. Id. "The homeowner's liability policy usually excludes the ownership, maintenance, operation, or use of an automobile, and the loading or unloading thereof, away from the premises or ways immediately adjoining." Id. (footnote omitted). See also Waterhouse, 424 A.2d at 682. "Although the homeowner's policy is not confined to protection for risks arising strictly out of the use of residential premises, it is, as the name suggests, home oriented." Westchester, 126 N.J. Super. at 41, 312 A.2d 664.
Reversed.
NOTES
[1] In order to fall under the ambit of "arising out of the use" it is sufficient to show only that the accident or injury "was connected with," "had its origins in," "grew out of," "flowed from," or "was incident to" the use of an automobile. Hogle v. Hogle, 167 Conn. 572, 356 A.2d 172 (1975).