746 A.2d 1053 (2000)
329 N.J. Super. 91
CONDUIT AND FOUNDATION CORPORATION, Plaintiff,
v.
HARTFORD CASUALTY INSURANCE COMPANY, Universal Steel Erectors, Inc., Estate of Paul Krempa, Frank and Nancy Krempa, Keith D. Smith, Kelly Equipment Company, Inc., Gary Auto Lease, Inc., State of New Jersey Department of Transportation, Defendants.
Hartford Casualty Insurance Company, Third-Party Plaintiff/Appellant,
v.
Providence Washington Insurance Company, Third-Party Defendant/Respondent, and
Aetna Casualty & Surety Company, Third-Party Defendant.
Superior Court of New Jersey, Appellate Division.
Argued February 22, 2000.
Decided March 8, 2000.
*1054 Jennine DiSomma, Newark, for third-party plaintiff/appellant (Saiber Schlesinger Satz & Goldstein, attorneys; Ms. DiSomma and Diana L. Parmer, on the brief).
John C. Simons, for third-party defendant/respondent (Hoagland, Longo, Moran, Dunst & Doukas, attorneys; James B. Moran, New Brunswick, of counsel; Jacquelyn L. Poland, on the brief).
Before Judges CONLEY and COBURN.
The opinion of the court was delivered by, CONLEY, J.A.D.
This insurance appeal arises from an automobile accident that occurred on a construction site on Route 80. It is not brought by the insured, Universal Steel Erectors (Universal), a subcontractor on the site and the owner of the vehicle which was involved in the accident. Neither is it brought by the party in the ensuing personal injury litigation that had sought coverage under Universal's comprehensive general liability insurance, Conduit and Foundation Corporation (Conduit). Conduit was the contractor on the site responsible for maintaining the safety of the construction traffic lane. Rather, it is an appeal by Universal's comprehensive general liability (CGL) carrier, Hartford Casualty Insurance Company (Hartford), from *1055 a summary judgment in favor of Universal's business automobile carrier, Providence Washington Insurance Company (Providence) based upon a determination that Hartford's policy provides coverage for Universal's liability. We reverse.
Universal's employee was fatally injured in the accident. His estate sued Conduit for its negligence in supervising the traffic lane. Conduit, in turn, filed a third-party complaint against Universal. That complaint sought contractual indemnification alleging Universal's negligent entrustment and/or use of its vehicle.[1] It is this claim that triggered Universal's potential liability, and thus that of its insurers.
Hartford's CGL policy contained an automobile exclusion. And so, Hartford undertook Universal's defense on the third-party indemnification claim but with a reservation of rights. Conduit, then, filed a declaratory judgment action alleging that it was an additional insured on Hartford's CGL policy and that Hartford was estopped from denying coverage to it as such.[2]
Universal had a business automobile policy with Providence which covered the vehicle involved in the accident. Hartford filed an answer in Conduit's declaratory judgment action and a third-party complaint against Providence alleging that, whereas the automobile exclusion in the Hartford policy precluded coverage, Providence's automobile policy expressly provided coverage for the personal injuries arising from the accident.[3] Hartford also alleged, alternatively, that if its policy was applicable, it was only as an excess policy pursuant to the "other insurance" provisions of the Hartford and Providence policies.[4] We assume Providence filed an *1056 answer to this third-party complaint, although the record provided to us does not contain it.
In any event, all of the underlying issues, both as to the personal injury suit and Conduit's third-party complaint against Universal for contractual indemnification, were settled for $981,000. We are told by Hartford, and it is not disputed by Providence, that Conduit's separate declaratory judgment action against Hartford for coverage as an additional insured on Universal's CGL policy was part of the settlement. The only remaining issue was whether Hartford or Providence would bear ultimate liability for the $475,000 Hartford contributed on Universal's behalf. In cross-motions for summary judgment, the motion judge determined that Hartford's CGL policy should pay. We disagree.
Before we address Hartford's contention that the motion judge erred in concluding that its policy and not that of Providence was applicable, we set forth the parameters of the dispute between Hartford and Providence as presented to us by virtue of the procedural posture of this case. First, and perhaps foremost, any claims Conduit may have had as a direct insured on Hartford's policy have been settled and are not before us. Second, the basis for Universal's liability, and thus that of Hartford and Universal on Conduit's contractual indemnification third-party claim, has been conceded. That is to say, as we understand it, in settling all of the issues involved in the proceedings below, both insurers have agreed that Universal's indemnification agreement with Conduit was an "insured contract" as defined by both policies and that Universal is liable, to some extent, for the personal injuries sustained in the automobile accident pursuant to that agreement. Finally, as posited below, there is no dispute that Universal's contribution to the settlement of the underlying personal injury suit, through Hartford, will be paid (indeed has been paid), and that that amount has been agreed to by both carriers.
As we have said, then, this is an insurance coverage dispute. It is not a dispute over the scope of the indemnification agreement between Conduit and Universal or whether that agreement is an "insured contract" for the purposes of insurance coverage under either policy. Nonetheless, the motion judge's decision focused upon the indemnification provision in Universal's subcontract with Conduit and whether "the Court should look to the nature and quality of the allegations asserted against the indemnitee [Conduit] or those asserted against the insured indemnitor [Universal]." The judge determined that the inquiry should focus on Conduit and, further, concluded that the accident was caused substantially by the negligence of Conduit in its supervision of the work site.[5]
*1057 As we understand the judge's rationale, then, he concluded that Universal had agreed to indemnify Conduit for Conduit's negligence and that the cause of the accident was Conduit's negligence "in the maintenance of the construction road, or the lack thereof." He said "looking at ... the acts of the indemnitee, it's clear to the Court that this was not an automobile accident or anything that could be extended to include actions ... that an automobile insurance carrier would have to respond to." Rather, he thought, "[t]his clearly ... was something that took place by way of the actions of Conduit in the maintenance of the construction road, or the lack thereof, and that therefore this would clearly be covered by Hartford's general contractor's liability policy."
We suppose, where there is a business automobile policy and a CGL policy for that business and something untoward happens on the insured's work site triggering liability on the part of the insured, the natural inclination may well be to view that as a matter of CGL coverage, particularly where the liability may be premised upon assumption of another's workplace negligence. In that scenario, the fact that a vehicle is the instrument of the underlying harm might be considered either incidental or not relevant. That we think was the general thrust of the judge's consideration of the insurance dispute here.
The difficulty with this rationale under the circumstances as presented to us is several-fold. First, it assumes, without reference to the terms of the Providence policy, that there is no coverage under that policy. This seems not to be so here. See n.3, supra. Moreover, as we understand the settlement below, both carriers have agreed that the only issue that remains is which of the two will be responsible. That assumes that if we determine Hartford's policy does not apply because of its auto exclusion, Providence will provide the coverage.[6]
Second, the motion judge's rationale fails to recognize that the involvement of the use of the motor vehicle here was not incidental, either to the injuries that were sustained, or to the cause of action, whether it be as to Conduit's third-party complaint against Universal or the plaintiff's complaint against Conduit. As to the former, *1058 Conduit's claim for indemnification was based upon an allegation that Universal's vehicle was driven negligently. As to the latter, while the claim is that Conduit was negligent in its maintenance and supervision on the work site, the specific allegations focused upon Conduit's traffic supervisionactivity entirely concerned with vehicular use.
Third, the judge failed to consider the language of Hartford's policy, not to mention Providence's policy. While we look for the probable intent of the parties and their reasonable expectations in construing insurance policies and construe exclusionary clauses in strict fashion, when the language of an insurance policy is clear, we must enforce its terms as written. E.g., Miller v. McClure, 326 N.J.Super. 558, 564-65, 742 A.2d 564 (App.Div. 1998), aff'd o.b., 162 N.J. 575, 745 A.2d 1162 (1999); Robert W. Hayman, Inc. v. Acme Carriers, Inc., 303 N.J.Super. 355, 357, 696 A.2d 1125 (App.Div.1997). See Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 98-100, 698 A.2d 9 (1997) (exclusion in gynecologist's malpractice policy for criminal acts applies to personal injury claim by patient based upon alleged sexual assault during gynecological exam).
Hartford's CGL policy agrees to pay "those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies." (Emphasis added). As we have said, as the issues have been presented to us Universal's obligation to pay damages for the bodily injuries of the plaintiff arose solely from its indemnification agreement with Conduit. It is agreed that Hartford's policy applies to that obligation. But, the policy expressly excludes coverage for:
"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured.
This exclusion applies to all potential coverage under the policy.
Reflective of the breadth of the automobile exclusion is the fact that while the exclusion also extends to aircraft and watercraft, it expressly limits its scope as to these forms of conveyances to certain circumstances. That is to say, the exclusion for bodily injuries arising from the use of the aircraft and watercraft is not absolute and coverage under the policy for such bodily injuries may or may not be available depending upon the circumstances. Not so as to bodily injuries arising from the use of an automobile. There is no coverage whatsoever for such bodily injuries.
The personal injury litigation, Universal's contractual indemnification liability therefor, and, thus, the basic premise for the insurer's responsibility, all came about because of bodily injuries that arose from the use of an automobile. Thus, it is Providence's automobile policy that applies. See Scarfi v. Aetna Cas. & Sur. Co., 233 N.J.Super. 509, 515, 559 A.2d 459 (App.Div.1989) ("[t]he [CGL] policy clearly was designed to exclude coverage for personal injuries and property damage arising out of automobile accidents. It appears that coverage for such accidents was provided not by the CGL policy but, rather, by the Aetna Business Auto policy...."); Williamson v. Continental Cas. Co., 201 N.J.Super. 95, 101, 492 A.2d 1028 (App.Div.1985) ("[p]lainly there was coverage under the automobile policy since plaintiff's injuries arose out of the use of the automobile and it should follow, as it did in Westchester [Fire Ins. Co. v. Continental Ins. Co., 126 N.J.Super. 29, 312 A.2d 664 (App.Div.1973), aff'd o.b., 65 N.J. 152, 319 A.2d 732 (1974) ], that the language in the automobile and homeowner's policies is mutually exclusive.").
In the context of whether an automobile policy provides coverage for personal injury, it is, by now, universally understood that the words "arising out of" are interpreted in a "broad and comprehensive sense to mean `originating from' or *1059 `growing out of' the use of the automobile." Westchester Fire Ins. Co. v. Continental Ins. Co., supra, 126 N.J.Super. at 38, 312 A.2d 664. See Allstate Ins. Co. v. Moraca, 244 N.J.Super. 5, 13 n. 1, 581 A.2d 510 (App.Div.1990). Thus, it is not a requirement that "personal injury" be a direct and proximate result of the use of the automobile to satisfy the "arising out of" element of an automobile policy. Westchester Fire, 126 N.J.Super. at 37, 312 A.2d 664; Moraca, supra, 244 N.J.Super. at 13 n. 1, 581 A.2d 510 ("[i]n order to fall under the ambit of `arising out of the use' it is sufficient to show only that the accident or injury `was connected with,' `had its origins in,' `grew out of,' `flowed from,' or `was incident to' the use of an automobile."). See also Home State Ins. Co. v. Continental Ins. Co., 313 N.J.Super. 584, 594, 713 A.2d 557 (App.Div.1998), aff'd o.b., 158 N.J. 104, 726 A.2d 1289 (1999) (injuries from assault to student while a passenger on a school bus arose out of the ownership, maintenance, or use of the bus and, therefore, coverage was provided by the business owner's automobile policy and not his general liability policy which contained an automobile exclusion).
We recognize that the language "arising out of" that we focus upon here is in the context of an automobile exclusion in a CGL policy. But we know of no basis for giving such language any other than its commonly accepted application. As applied here, therefore, while the primary culprit may have been Conduit in its failure to properly supervise the construction vehicular traffic, we think there can be no dispute but that the bodily injuries sustained arose out of the use of an automobile within the meaning of the CGL's automobile exclusion.
Instructive are Allstate Ins. Co. v. Moraca, supra, 244 N.J.Super. 5, 581 A.2d 510, Bartels v. Romano, 171 N.J.Super. 23, 27, 407 A.2d 1248 (App.Div.1979), and Westchester Fire Ins. Co. v. Continental Ins. Co., supra, 126 N.J.Super. 29, 312 A.2d 664. In Westchester Fire, a bicyclist was injured when a piece of wood was thrown from a vehicle and hit him. The bicyclist sued not only the occupants of the vehicle, but their parents for "negligence in the care, control and discipline of their child." The parents looked to their homeowners insurer which, in turn, sought a declaration that the parent's automobile insurer was responsible. The homeowner's policies, like the Hartford policy here, excluded coverage for injuries arising out of the "ownership, maintenance, operation, [or] use ... of automobiles." Id. at 41, 312 A.2d 664. We determined that a "substantial nexus" existed between the alleged injury and the use of the automobile in that the act that caused the injury was a "natural and reasonable incident or consequence" of the use of the vehicle. Westchester Fire, supra, 126 N.J.Super. at 38, 312 A.2d 664. Looking to the specific language of the policies, we found "the homeowners policy[ ] is specifically designed to exclude the coverage provided under language in the ... automobile policy for injuries arising out of the use of the motor vehicle." Id. at 41-42, 312 A.2d 664. We concluded that because the injury was one "arising out of" the "use" of the automobile, the automobile insurer, not the homeowner's insurer, must defend and indemnify the insured. Ibid.
In Bartels, we again held that, based on an automobile exclusion contained in a homeowner's policy, there was no coverage for injuries arising out of an accident which occurred when a car parked in a driveway unexpectedly rolled backwards and struck the plaintiffs. Bartels, supra, 171 N.J.Super. at 27, 407 A.2d 1248. In determining whether the automobile policy applicable to that vehicle or the homeowner's policy should provide coverage on the negligent supervision claims, we viewed the pivotal issue to be "whether the injury sustained arose out of the use of the automobile." Ibid. Concluding that whatever might be the causative role of the homeowner's negligence, the injuries were a consequence of the use of the automobile, *1060 and we held that the automobile insurer, not the homeowner's insurer, must provide coverage even for ostensibly unrelated claims of negligent supervision and that the automobile exclusion in the homeowner's policy precluded coverage thereunder.
In Moraca, we held that an automobile exclusion in a homeowner's policy excluded coverage for negligent entrustment claims where the insured had permitted her son to use her vehicle. Moraca, supra, 244 N.J.Super. at 17-18, 581 A.2d 510. In concluding there was no coverage for the negligent entrustment claims under the homeowner's policy, we said that "coverage turns on the cause of injury, rather than on the legal theory asserted against the insured." Id. at 17, 581 A.2d 510 (quoting 7A Appleman Insurance Law and Practice § 4500 (Berdal ed. Supp. 1990)). We held that because the claim of negligent entrustment is so intertwined with automobile use in that "no harm is done until the entrustee negligently drives the vehicle," the automobile exclusion in the homeowner's policy applies and it is, therefore, the automobile policy, not the homeowner's policy, that must provide coverage. Id. at 14, 17, 581 A.2d 510.
In a somewhat analogous case dealing with competing CGL and automobile policies, we applied the same analysis to determine if an automobile exclusion in a CGL policy excluded coverage in Scarfi v. Aetna Cas. & Sur. Co., 233 N.J.Super. 509, 559 A.2d 459 (App.Div.1989). In Scarfi, an insured sought coverage under its CGL policy after it was sued by the driver of a van who was struck by a dump truck used in the insured's business and operated by the insured's employee. Id. at 511-12, 559 A.2d 459. The claim against the insured was based on its alleged negligence in both hiring and training the truck driver and repairing and maintaining the truck. Id. at 517, 559 A.2d 459. The CGL policy, like the Hartford policy here, excluded "bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any ... automobile... owned or operated by or rented to any insured." Id. at 513, 559 A.2d 459. We held that the automobile exclusion in the CGL policy applied because the underlying claim for negligent hiring or training was "triggered" only when the van driver was injured as a result the automobile accident. Scarfi, supra, 233 N.J.Super. at 515, 559 A.2d 459. We observed that some claims are so interrelated and "incidental to the ownership, operation or use of the truck [that they] were not covered by Aetna's CGL policy." Ibid.
Providence, however, relies upon Salem Group v. Oliver, 128 N.J. 1, 607 A.2d 138 (1992), and City of Manchester v. General Reinsurance Corp., 127 N.H. 806, 508 A.2d 1063 (1986). Its reliance is misplaced. In Manchester, a city employee was operating a city owned truck when he hit a pothole. Another city employee, riding on the rear platform of the truck, fell and received fatal injuries. The co-employee sued the employee and sought to recover from the city on the basis of its agreement to indemnify its employees for their negligence. The city sued its general liability insurer and its automobile liability insurer, seeking coverage. The general liability policy excluded coverage for "bodily injury ... arising out of the ... operation [or] use... of ... any automobile ... owned ... by ... any insured." Id. at 1064. The trial court held that, under this exclusion, the general liability policy would not cover the City's obligation to indemnify the employee for his negligence, and the City appealed. Ibid. On appeal, the City argued that the court should distinguish between the employee's liability to the co-employee based in tort, and the City's liability to the negligent employee based in contract. The Supreme Court of New Hampshire rejected this contention and affirmed, observing "if we were to accept the city's position, the city could unilaterally convert a general liability policy without motor vehicle coverage into a motor vehicle policy providing such coverage, simply *1061 by making an indemnity agreement." Id. at 1065. The Court, therefore, enforced the automobile exclusion in the City's general liability policy. If anything, Manchester supports a conclusion that the automobile exclusion in Hartford's CGL policy precludes coverage here.
Providence's reliance upon Salem Group v. Oliver, supra, 128 N.J. 1, 607 A.2d 138, may be on more solid ground but is also misplaced. In Salem Group, a divided Court held that a homeowners insurer owed a duty to defend against a social host claim where a vehicle accident gave rise to the underlying personal injury suit, despite an automobile exclusion in the homeowner's policy. The homeowner had served alcohol to his nephew who thereafter drove an all-terrain vehicle (ATV) and had an off-premises accident. The homeowners policy had an exclusion for injuries arising out of the operation, ownership or use of a motor vehicle. In the context of the duty to defend, the Court looked to the allegations in the complaint as to the insured social host's involvement and thought the excluded risk (the use of the vehicle) was merely "an additional cause of the injury." Salem Group, supra, 128 N.J. at 3, 607 A.2d 138. In resolving whether the homeowners insurer should defend in light of the social host allegations, the Court adopted the rule that "when two ... risks constitute concurrent proximate causes of an accident, the insurer is liable [to defend] so long as one of the causes is covered by the policy." Id. at 5-6, 607 A.2d 138 (quoting State Farm Mut. Auto. Ins. Co. v. Partridge, 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123, 128 (1973)).
Of course, here, there are potentially "two ... risks constitut[ing] proximate causes"the allegation of Conduit's construction traffic supervisory actions/inactions and Universal's employee's use of the covered automobile. But we have recently noted that "[t]he [Salem] Court limited its holding to the duty to defend, stating `[w]e hold not that the insurer may ultimately be liable under the policy, but only that it must honor its duty to defend.'" Robert W. Hayman, Inc. v. Acme Carriers, Inc., supra, 303 N.J.Super. at 358 n. 2, 696 A.2d 1125 (quoting Salem Group v. Oliver, supra, 128 N.J. at 6, 607 A.2d 138).
A duty to defend, of course, is broader than the duty to indemnify. Danek v. Hommer, 28 N.J.Super. 68, 77, 100 A.2d 198 (App.Div.1953), aff'd o.b., 15 N.J. 573, 105 A.2d 677 (1954). The duty to defend is determined by comparing the allegations of the complaint with the language of the policy; if there are multiple causes of action alleged, only one of which may be covered, the duty to defend will continue until every covered claim is eliminated. Robert W. Hayman, Inc. v. Acme Carriers, Inc., supra, 303 N.J.Super. at 358, 696 A.2d 1125; Mt. Hope Inn v. Travelers Indemn. Co., 157 N.J.Super. 431, 440-41, 384 A.2d 1159 (Law Div.1978). There is no issue of a duty to defend here. Hartford provided a defense, albeit with a reservation of rights.
The Court in Salem Group, moreover, focused upon the fact that the negligent act of serving alcohol to a minor was distinct from the minor's use of the ATV. In this respect, this rationale was recently described thusly: "[s]tated another way, there was [in Salem Group ] a manifest hazard created by serving alcohol to a minor that would have existed even in the absence of the use of [an] insured's vehicle. The separateness of the two causes is also apparent because there were distinct objects of the alleged acts of negligence: alcohol on the one hand, and the motor vehicle on the other." Mailhiot v. Nationwide Mut. Fire Ins. Co., 740 A.2d 360, 362 (Vt.1999).
In rejecting reliance upon Salem Group in a somewhat analogous case, we noted this distinction in Daus v. Marble, 270 N.J.Super. 241, 249-50, 636 A.2d 1091 (App.Div.1994). There a worker was injured by pallets pushed into him by a forklift truck driven by a co-worker's son. The injured worker sued the co-worker *1062 alleging negligent supervision and that the co-worker negligently permitted the son to operate the vehicle. The co-worker filed a third-party complaint against his homeowners insurer when it declined coverage. The homeowner's policy had an automobile exclusion, similar to the one here, which was applicable to the forklift truck. But relying upon Salem Group, the co-worker claimed that because the complaint against him was dependent upon conduct separate from the actual driving of the forklift truck, that is the negligent supervision of his son, the automobile exclusion could not apply to defeat otherwise available coverage. We concluded the insured's reliance upon Salem Group was misplaced, observing:
the Supreme Court made it clear that the question of coverage for the insured turned on the peculiar facts of the case and the nature of the coverage afforded the insured. The fifth count of the complaint clearly alleged social host liability against the insured for supplying alcoholic beverages to Oliver. With respect to that count and the homeowners'[] policy, the Court observed:
No one disputes that insurers are generally obligated to defend their insureds on social host claims. The critical question is whether the insurer can avoid that obligation because a separate excluded risk, the operation of an all-terrain vehicle (ATV), constitutes an additional cause of the injury. We find that the insurer remains obligated to defend the covered risk. It may not avoid that obligation simply because the operation of an ATV constitutes an additional cause of the injury. [Salem Group, supra, 128 N.J. at 3, 607 A.2d 138 (emphasis added).]
The Supreme Court specifically distinguished cases, such as Salem Group, where the insured's liability for personal injuries can be premised on a theory wholly independent of negligent supervision involving an automobile (i.e., social host liability), from those cases, such as Allstate Ins. Co. v. Moraca, 244 N.J.Super. 5, 581 A.2d 510 (App.Div.1990), where the plaintiff's theory of liability is based solely on the insured's failure to exercise sufficient control and supervision over a child in the operation of a motor vehicle. Id. at 5, 581 A.2d 510. In the latter cases, the Supreme Court recognized the justification for excluding coverage under the homeowners policy to the parent because
[t]he negligent entrustment or supervision cannot be isolated from the ownership and operation of the insured automobile. In contrast, the serving of alcohol to a minor does not depend on the insured's ownership of a motor vehicle or its entrustment to another. One need not own a motor vehicle to serve alcohol to another. [Salem Group, supra, 128 N.J. at 5, 607 A.2d 138.]
In Moraca, supra, a negligent supervision claim was made against the insured, Yodice, for injuries caused by the alleged reckless driving of her son, Daniel. Id. 244 N.J.Super. at 7, 581 A.2d 510. Allstate denied coverage based on its exclusion for accidents "arising out of" the use of "any motorized land vehicle." Id. at 8, 581 A.2d 510. We held that the homeowner's insurance policy exclusion applied to claims against Yodice for damages based on negligent supervision. As noted earlier, that holding was impliedly approved by the Supreme Court in Salem Group, supra, 128 N.J. at 5, 607 A.2d 138.
[Daus v. Marble, supra, 270 N.J.Super. at 249-50, 636 A.2d 1091.]
Cf. American Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 41-42, 713 A.2d 1007 (1998) (employee's claim of workplace harassment, discrimination and wrongful discharge was an excluded claim under employer's CGL policy based upon an exclusion for bodily injury "arising out of and in the course of employment," as the employment relationship was the underlying *1063 predicate for the claims); Stafford v. T.H.E. Ins. Co., 309 N.J.Super. 97, 104-05, 706 A.2d 785 (App.Div.1998) (nightclub's CGL policy with an exclusion for assault and battery did not provide coverage for injuries caused by a shooting by another patron despite the fact that the nightclub's liability might arise from negligent supervision or inadequate security as the underlying operative facts involved an assault and battery).
Here, the underlying factual predicate for both the third-party claim against Universal and the claims against Conduit arises from an automobile accident. Unlike Salem Group, therefore, the claims asserted against both Universal and Conduit cannot be separated from the use of the vehicle. Conduit alleges in its third-party complaint the right to contractual indemnification for Universal's "negligent operation of its vehicle." These specific allegations directly relate to and arise out of the use of an automobile. The claim against Conduit in the underlying personal injury litigation that it negligently maintained a traffic lane resulting in an automobile accident that caused the bodily injuries is also closely intertwined with the use of the vehicle for, without automobile use, there is noting to supervise, negligently or otherwise. The basis of the claim against Conduit, moreover, was not generally failing to maintain the traffic lane, but failure to properly supervise and regulate the safe flow of traffic thereon and failure to, in the instant case, prevent two cars from using the lane at the same time in opposite directions. We cannot conceive of how the use of Universal's automobile and the resulting injuries could be considered separable from Conduit's alleged negligence.
Finally, we note that Providence has framed much of its contentions here in the context of Conduit as the insured. Conduit is not the insured, as the case has been presented to us. As we have previously said, any claim that Conduit had as an additional insured on the CGL policy has been settled. In the context of this appeal, it is Universal as the insured that we must consider. Moreover, Providence also persistently asserts that "the CGL policy should provide coverage for Conduit through its contractual indemnification agreement with Universal for Conduit's negligence in the supervision of a construction site." (Emphasis added). But that was not the allegation asserted in Conduit's third-party complaint. It sought indemnification arising from Universal's negligent use of its vehicle.
In the context of the circumstances as presented to us, then, the allegations of negligence against Conduit were not just construction site negligence, but negligence in the control of vehicular traffic. The factual predicate for the alleged negligence was an automobile accident. Can the intertwining of such negligence with the use of the automobiles involved in the accident be truly disputed? We think not.
Reversed.
NOTES
[1] The subcontract between Conduit and Universal provided for Universal to indemnify Conduit "against any loss, cause of injury or damage to persons or property arising or resulting from the performance of this subcontract, including any ... damage[s] ... which the ... Contractor may ... incur on account of any ... suit made or brought against [it]... on behalf or any employee of the subcontractor, or by or on behalf of any person injured by the subcontractor ... and/or in case of any claims being made or action instituted for any act of the subcontractor resulting in injury or damage...." Pursuant to this indemnity provision and a further agreement to obtain insurance therefor, Conduit was added to the Hartford CGL policy by an endorsement that stated:

In consideration of the premium charged, it is agreed that [the policy] is amended to include as an insured any person or organization with whom you agreed, because of a written contract or agreement, permit to provide insurance such as is afforded under this policy, but only with respect to your operations, "your work" or facilities owned or used by you.
[2] As we have set forth in footnote 1, the language of the endorsement adding Conduit as an additional insured limits the coverage to "your [Universal's] operations, `your work' or facilities owned or used by you." Whether this coverage would apply to Conduit for negligence arising from its (Conduit's) performance on the job site may be questionable but has not been raised by the parties in this appeal.
[3] In this respect, the Providence policy provides:

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
As we have said the vehicle involved in the accident was a covered vehicle. Facially, the policy provides coverage as the personal injuries were caused by an accident and resulted from the use of the covered vehicle. Universal's liability here for such personal injuries arose, if at all, from Conduit's contractual indemnification claims. Providence's policy agreed to provide such contractual indemnity pursuant to an exception to an exclusion for contractual liability for an "insured contract." "Insured contract" is defined in the policy as:
That part of any ... contract or agreement pertaining to your business ... under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization.
As far as we can tell, Providence has never claimed either that Universal's liability was not within the scope of an "insured contract" as defined in its policy or that there are exclusions which would preclude coverage.
[4] This issue, though apparently raised by Hartford below, was not considered by the motion judge. Hartford raises it before us. Since we have determined that it is correct in its assertion that it is Providence's policy which must provide coverage we do not address the issue. We simply note that the plain language of the two policies seem to support Hartford's contention. In this respect, Hartford's policy says it is primary except if the loss covered "arises out of the ... use of ... `autos,'" in which case it is excess. Providence's policy says that "[f]or any covered auto you own, this Coverage Form provides primary insurance."
[5] At the time of the accident, construction traffic was utilizing the eastbound lane of Route 80 that was closed to all but construction vehicles. It was Conduit's contractual responsibility to maintain the safety of the construction traffic. The accident occurred when Universal's vehicle traveling eastbound was hit head on by another subcontractor's vehicle traveling westbound. The accident analysis expert in the underlying personal injury suit opined:

1. All traffic plans reviewed establish and limit traffic flow to eastbound vehicles only in the traffic lane involving the accident.
2. There were no warning signs placed notifying Mr. Krempa that two way construction traffic was operating in the closed eastbound express lane.
3. Flaggers or traffic directors should have been utilized to control opposite direction traffic flow in the one (1) lane closed for construction.
4. A flagger or traffic director should have been placed at the area where eastbound construction related vehicles entered the job site at Route 80 East to notify vehicle operators that two-way traffic was operating in the area.
5. Flaggers or traffic directors with radios should have been placed at both ends of the single lane construction area to safely direct one lane traffic through the area.
6. The decision of the contractor to instruct the truck drivers to drive opposite the traffic flow without placement of safety devices, signs, and traffic directors or flaggers was unsafe.
7. The contractor failed to consider that vehicles making deliveries to the job site and motorists, who traveled through the unprotected opening in the roadway closure, were not aware that two-way traffic would be operating in the closed eastbound lane.
8. The area of the accident was not safe for the movement of two way traffic.
9. The contractor should have devised a traffic flow plan to permit dump trucks hauling milling to proceed in an eastbound direction only.
10. [The operator of the other subcontractor's vehicle] should not have operated his truck contrary to the flow of traffic.
[6] As described by Providence in its brief for instance:

It was agreed that Hartford and Providence Washington would then litigate, in this declaratory judgment action, which of the two carriers that insure UniversalHartford or Providence Washingtonis responsible for the portion of the ... settlement paid by Hartford as well as the costs of defending Universal.... This remaining coverage dispute concerns which carrier, Universal's CGL insurer or its automobile insurer, must provide coverage for Universal's contractual indemnification of Conduit....
[Emphasis added.]
Implicit in this description of what is before us is the assumption that if one is not liable, then the other will be.